THE STATE OF OHIO, APPELLANT, *v.* ANDERSON, APPELLEE.

[Cite as State *v.* Anderson (1991), 57 Ohio St. 3d 168.]

(No. 89-2113—Submitted December 11, 1990—Decided February 13, 1991.)

ALICE ROBIE RESNICK, J. The question presented in this appeal is whether R.C. 955.11(A)(4)(a)(iii) is constitutional under the Due Process Clauses of the state and federal Constitutions. R.C. 955.11(A)(4)(a)(iii) provides in pertinent part:

" 'Vicious dog' means any dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following:

"* * *

"(iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."

The Tenth District Court of Appeals found this statute to be unconstitutionally void for vagueness. On the basis that "there is no dog 'commonly known as a pit bull dog [,]' " the court found that an individual of ordinary intelligence would not be able to conduct his affairs so as to comply with the statute. Moreover, it found that due to the lack of definite standards in the statute, it could not be administered in a fair and impartial fashion. As a result, the appellate court affirmed the judgment of the trial court granting the appellee's motion to dismiss. For the reasons which follow, we reverse the judgment of the court of appeals and hold that R.C. 955.11(A)(4)(a)(iii) is not unconstitutionally void for vagueness.

It is well-established that private property is held subject to the general police power of a state and may be regulated pursuant to that power. *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 30 O.O. 2d 491, 205 N.E. 2d 363. As the court noted in *Vanater* v. *South*

*Ronald J. O'Brien,* city attorney, *James J. Fais,* city prosecutor, and *Thomas K. Lindsey,* for appellant.

*James Kura,* county public defender, and *Allen V. Adair,* for appellee.

*Point* (S.D. Ohio 1989), 717 F. Supp. 1236, 1241, Section 19, Article I of the Ohio Constitution specifically recognizes the subordination of private property to the general welfare. As a result of this subordination, police power regulations are upheld although they may interfere with the enjoyment of liberty or the acquisition, possession and production of private property. As we recognized in *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, paragraph five of the syllabus, any exercise of the police power will be valid "if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary."

Among the regulations which have been upheld as legitimate exercises of police power are those regulations addressing the ownership and control of dogs. It cannot be doubted that a special relationship exists between humans and dogs. In this country, dogs have enjoyed tremendous popularity as pets. The expression "a dog is a man's best friend" attests to the joy and closeness often experienced between people and dogs. Due to the ease with which dogs can be trained, they have served as seeing eyes for the blind, and as protectors of people and property from unwanted intrusion and physical harm. To many, a pet dog is as important and as loved as the human members of the family.

However, as a result of breeding, training, and abuse, there are dogs that pose a grave threat to human health and safety. In response to this reality, the United States Supreme Court has recognized that the state retains great power to regulate and control the ownership of dogs. In *Sentell* v. *New Orleans & Carrollton RR. Co.* (1897), 166 U.S. 698, the court declared that although dogs are private property to a qualified extent, they are subject to the state police power, and "might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. * * *" *Id.* at 704. While acknowledging that most dogs are harmless, *id.* at 705, the court approved the principle that legislatures have broad police power to regulate all dogs so as to protect the public against the nuisance posed by a vicious dog. *Id.* at 701-702.

In recent years, this power has been used to control a dog which poses a special danger to the public. During the past ten years, there has been a dramatic rise in the number of fatalities and severe maulings caused by pit bull dogs. Unlike dogs who bite or attack merely to protect a person or his property and then retreat once the danger has passed, pit bulls besiege their victims relentlessly, until severe injury or death results. In response, lawmakers in states and cities across the country have enacted legislation regulating pit bull dog ownership. See Note, The New Breed of Municipal Dog Control Laws: Are They Constitutional? (1984), 53 U. Cin. L. Rev. 1067. These laws range from statutes which ban pit bull ownership outright to statutes which permit ownership but require owners to confine their dogs in particular ways and obtain liability insurance coverage.[1]

---

[1] Ordinance 87-6, passed by the Council of the village of South Point on June 16, 1987, prohibits the owning or harboring of a pit bull terrier or any other type of vicious dog within the village limits. See *Vanater* v. *South Point, supra,* at 1239. Similarly, Ordinance No. 32, passed by the village of Tijeras, New Mexico on May 14, 1984, makes it unlawful to own or possess in the village any dog of the breed known as the

As with all statutes designed to promote the public health, safety, and welfare, these ordinances enjoy a strong presumption of constitutionality. See *Jackman* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 38 O.O. 2d 404, 224 N.E. 2d 906. The party alleging that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail. *Jackman, supra; Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, 396, 16 O.O. 3d 430, 431, 405 N.E. 2d 1047, 1049.

Appellee claims that R.C. 955.11 (A)(4)(a)(iii) is unconstitutionally void for vagueness. In order to prove such an assertion, the challenging party must show that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. * * *" *Coates* v. *Cincinnati* (1971), 402 U.S. 611, 614. In other words, the challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law. Thus, to escape responsibility under R.C. 955.11(A) (4)(a)(iii), appellee must prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged. See *United States* v. *Harriss* (1954), 347 U.S. 612, 617; see, generally, 25 Ohio Jurisprudence 3d (1981) 106, Criminal Law, Section 8.

Appellee contends that there is so much confusion and disagreement as to what constitutes a pit bull dog that an ordinary dog owner would not know whether he or she is required to comply with the statute. We acknowledge that it is difficult to form a precise definition of a "pit bull dog." As the district court noted in *Vanater, supra,* "Pit Bulls vary in their size, shape and color, and * * * experts * * * have been wrong in their identification of dogs.

"There is no statistically definable qualitative method to distinguish a Pit Bull by its biochemical makeup." *Id.* at 1240. Similarly, in *State* v. *Robinson* (1989), 44 Ohio App. 3d 128, 541 N.E. 2d 1092, where the court upheld R.C. 955.11(A)(4)(a)(iii) against a vagueness challenge, the court conceded that the definition of "pit bull" "may indeed be somewhat elusive. * * *" *Id.* at 132, 541 N.E. 2d at 1096.

Nonetheless, pit bull dogs are distinctive enough that the ordinary dog owner knows or can discover with reasonable effort whether he or she owns such a dog. First, there are certain physical characteristics which distinguish pit bulls from other dog breeds. In *Hearn* v. *Overland Park* (1989), 244 Kan. 638, 772 P. 2d 758, the court approved the lower court's findings that the " '* * * physical features [of pit bull dogs] include a short, squatty body with developed

American Pit Bull Terrier. See *Garcia* v. *Village of Tijeras* (App. 1988), 108 N.M. 116, 767 P. 2d 355, certiorari denied (1988), 107 N.M. 785, 765 P. 2d 758.

The city of North Miami's Ordinance No. 422.5 permits pit bull ownership but regulates it by requiring that owners carry insurance, register their dogs with the city, and confine their dogs indoors or in a locked pen. See *State* v. *Peters* (Fla. App. 1988), 534 So. 2d 760. For similar regulations, see O.P.M.C. 6.10.020, which regulates pit bull ownership in the city of Overland Park, Kansas, and R.C. 955.22, which is part of the statutory scheme at issue in this case.

chest, shoulders, and legs; a large, flat head; muscular neck and a protruding jaw. The appearance of these dogs typifies strength and athleticism. They can climb trees, they have extremely strong jaws and biting power, and they tend to clamp on to something and not let go.' " *Id.* at 643, 772 P. 2d at 763. Similarly, in *Singer* v. *Cincinnati* (1990), 57 Ohio App. 3d 1, 566 N.E. 2d 190, the court noted that the evidence at trial established that "the pit bull is an exceptionally strong and athletic dog which requires extraordinary measures for confinement (*e.g.,* six-foot-high enclosed fences). Pit bulls have exceptionally strong bites and have been known to destroy sheet-metal panels by ripping them apart with their teeth. * * *"

These descriptions of the physical traits of pit bull dogs are consistent with those contained in nonjudicial sources. During the pretrial hearings in the case at bar, Robert W. High, an expert from the American Kennel Club, described the pit bull as a muscular bull-type dog, almost all short-haired, with good width and length of jaw and a punishing bite. Similarly, the pit bull ordinance enacted by the city of North Miami, Florida, set forth in *State* v. *Peters, infra,* described the pit bull as a dog which possesses "massive canine jaws [which] can crush a victim with up to two thousand pounds (2,000) of pressure per square inch — three times that of a German Shepherd or Doberman Pinscher, making the Pit Bull's jaws the strongest of any animal, per pound * * *." *Id.* at 764.

While these physical descriptions are neither absolute nor all encompassing, the traits listed are common enough among pit bull dogs to constitute the physical representation of a dog "commonly known as a pit bull dog." As dogs commonly known as pit bulls possess these physical traits, and as these traits are readily identifiable, the vast majority of dog owners, *i.e.* owners of German shepherds, Siberian Huskies, cocker spaniels, and other breeds, will know, upon reading R.C. 955.11(A)(4)(a)(iii), that they do not own a pit bull dog. Furthermore, other dog owners will know, keeping the physical traits of dogs commonly known as pit bulls in mind, that they do own a pit bull dog. As the court stated in *American Dog Owners Assn., Inc.* v. *Dade Cty.* (S.D. Fla. 1989), 728 F. Supp. 1533, 1537, "[v]eterinarians opine that ordinary citizens may be trained to identify the breed of a dog based on the dog's physical appearance. In fact, one resident of the County gave testimony that he was able to determine the breed of the dog he owned after comparing its physical conformation to that of other pit bulls he had seen in the media."

Furthermore, the dog owner of ordinary intelligence, when determining whether he or she owns a pit bull dog, need not rely solely on the dog's physical traits. Rather, the pit bull possesses certain distinctive behavioral features which differentiate it from other dog breeds. In *Vanater* v. *South Point, supra,* the court found that pit bulls have the following behavioral traits: "* * * a) grasping strength, b) climbing and hanging ability, c) weight pulling ability, d) a history of frenzy, which is the trait of unusual relentless ferocity or the extreme concentration on fighting and attacking, e) a history of catching, fighting, and killing instinct, f) the ability to be extremely destructive and aggressive, g) highly tolerant of pain, h) great biting strength, i) undying tenacity and courage and they are highly unpredictable." *Id.* at 1240. The court further found that pit bulls possess the quality of gameness, which it described as "the propensity to catch and maul an attacked victim unrelentingly until

death occurs * * *." Similarly, in *Singer, supra,* the evidence presented at trial established that pit bulls "possess inherent characteristics of aggression, strength, viciousness and unpredictability not found in other dog breeds. * * * [U]nlike other breeds which retreat if they are injured in a fight or an attack, a pit bull will often bite, clamp down with its powerful jaw, and maintain its hold until separated from its victim." Finally, the Florida ordinance regulating pit bull ownership which was upheld in *State* v. *Peters* (Fla. App. 1988), 534 So. 2d 760, states that pit bulls are distinguished by "* * * a high [in]sensitivity to pain, extreme aggressiveness towards other animals, and a natural tendency to refuse to terminate an attack once it has begun * * *." *Id.* at 764.

When these behavioral traits are taken together with the physical characteristics described above, a fairly clear picture of a dog "commonly known as a pit bull dog" begins to emerge. However, these characteristics need not be viewed in isolation. When an ordinary dog owner acquires a dog, he or she usually engages in a preparatory process. Integral to that process is consideration of the breed of dog to be purchased. Most people do not go to a pet store or the Humane Society or read the classified advertisements with absolutely no concept of the breed of dog which they desire to obtain. In fact, as the court found in *American Dog Owners Assn.* v. *Dade Cty., supra,* "* * * most dog owners look for and select a dog of a particular breed because of their knowledge of or interest in a particular breed. * * *" *Id.* at 1539. Consequently, when they

eventually purchase a dog, most dog owners are aware of the breed which they own. *Id.* at 1539-1540.

Despite the investigation and acquisition of information which typically precede the purchase of a dog, a few individuals may unwittingly purchase a pit bull dog. However, even as to these individuals, the statute provides fair notice. If an individual does not know what type of dog he or she owns, any reasonable owner should be able to obtain this information with a small amount of effort. As the court noted in *American Dog Owners Assn., supra,* at 1541, "[i]f, after consulting the ordinance, an owner remains in a quandary as to whether the ordinance applied to him, the owner could seek guidance from a dictionary, a guidebook to dogs or from his or her veterinarian. * * *"

In sum, we believe that the physical and behavioral traits of pit bulls together with the commonly available knowledge of dog breeds typically acquired by potential dog owners or otherwise possessed by veterinarians or breeders are sufficient to inform a dog owner as to whether he owns a dog commonly known as a pit bull dog. We acknowledge that there may be some situations where an individual is arrested pursuant to R.C. 955.11 (A)(4)(a)(iii) even though the owner does not believe that he or she owns a dog commonly known as a pit bull. However, this is not a problem of constitutional dimensions.[2] Whether a particular dog constitutes a pit bull is a matter of evidence, to be determined at trial. *Vanater* v. *South Point, supra,* at 1244; *State* v. *Robinson, supra;*

---

[2] In order to be declared unconstitutionally void for vagueness, a statute must be vague in all of its applications, assuming the statute implicates no constitutionally protected conduct. *Hoffman Estates* v. *The* *Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 494-495. Occasional doubt or confusion about the applicability of a statute does not render the statute vague on its face. *Id.* at 495-496.

*Lima* v. *McFadden* (June 30, 1986), Allen App. No. 1-85-22, unreported. If a dog possesses none of the aforementioned physical or behavioral traits such that the owner had no actual or constructive notice that it was a dog commonly known as a pit bull, then the owner should have no difficulty establishing at trial that he or she does not in fact own a dog commonly known as a pit bull. Pit bulls possess the physical and behavioral traits as discussed in this opinion. A dog lacking in these features is not a dog "commonly known as a pit bull dog" and its owner cannot be convicted under the statute.

In addition to arguing that the statute does not provide fair notice to potential offenders, appellee contends that the statute poses an unfair danger of arbitrary and discriminatory enforcement. Appellee's contention is based on the confusion which he believes has arisen as to whether the statute covers only purebred pit bulls or mixed breeds as well. We perceive this as a problem of semantics alone. If a dog possesses the physical and behavioral traits discussed in this opinion, then its owner must comply with the statute or risk arrest and prosecution for noncompliance. The formal breed name which has been assigned to the dog is not relevant.

Before executing an arrest, an officer need not ask for the dog's papers and determine how it would be classified by the American Kennel Club or the United Kennel Club. Given the urgent circumstances under which pit bull-related arrests are generally executed, it would be counterproductive to compel officers to do extensive research into the background of a particular dog prior to arrest. Allowing the officer to execute the arrest based on observations of the dog's appearance and behavior leads to a rational administration of the statute. As the court recognized in *American Dog Owners Assn.* v. *Dade Cty., supra,* at 1537, "[p]resently, there exists no better method of identifying a pit bull dog than by its appearance. * * * Even if a scientific method is developed to identify breeds of dogs, an enforcement scheme will still depend on initial visual identification. * * *"

To be enforceable, legislation need not be drafted with scientific precision. *Vanater* v. *South Point, supra,* at 1243. Upholding a state statute against a vagueness challenge, the United States Supreme Court, in *Boyce Motor Lines* v. *United States* (1952), 342 U.S. 337, 340, stated that since "* * * few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. * * *" See, also, *Ferguson* v. *Estelle* (C.A. 5, 1983), 718 F. 2d 730, 734 ("* * * [t]here are inherent limitations in the precision with which concepts can be conveyed by the English language * * *").

Ohio's pit bull statute is the product of a prudent legislative compromise and sound public policy. Appellee's brief suggests that if the legislature had referenced particular dog breeds, such as the American Pit Bull Terrier, the American Staffordshire Terrier, and the Staffordshire Bull Terrier, then the statute would be constitutionally viable. Since we find the phrase "commonly known as a pit bull" sufficient to inform a dog owner of ordinary intelligence as to the conduct prohibited, we find this argument unpersuasive. Moreover, sound public policy compels us to find the Ohio statute superior to those statutes which rely on recognized dog breeds.

Of the two established national kennel clubs, the American Kennel

Club and the United Kennel Club, only the latter will recognize or register pit bulls.[3] The American Kennel Club does not recognize the breed and publishes no conformation standards on the pit bull dog. In the pretrial hearings in the case at bar, it was established that the American Kennel Club does not register pit bulls because of their unsavory tendencies.[4] Therefore, the pit bull is not a recognized breed for the very reason that it must be regulated: it poses a grave and inordinate danger to human health and safety. It would be wildly ironic to allow pit bulls to escape regulation on the basis of a circumstance which arises directly from the need for regulation.

Finally, many of the dogs which possess the physical traits of dogs commonly known as pit bulls and which behave in the way that pit bulls are commonly known to behave are mixed breeds. If the Ohio statute had restricted its scope to recognized pure breeds such as the American Staffordshire Terrier, then all of the other dogs would have escaped regulation. By focusing on dogs able and likely to cause harm, rather than on the bloodlines established by private kennel clubs, the Ohio Legislature created a statute which is better calculated to protect the public from danger.

In sum, we reject the appellee's contention that the phrase "commonly known as a pit bull dog" is so devoid of meaning that R.C. 955.11(A)(4(a)(iii) is unconstitutionally void for vagueness. Pit bull dogs possess unique and readily identifiable physical and behavioral traits which are capable of recognition both by dog owners of ordinary intelligence and by enforcement personnel. Consistent and detailed descriptions of the pit bull dog may be found in canine guidebooks, general reference books, state statutes and local ordinances, and state and federal case law dealing with pit bull legislation. By reference to these sources, a dog owner of ordinary intelligence can determine if he does in fact own a dog commonly known as a pit bull dog within the meaning of R.C. 955.11 (A)(4)(a)(iii). Similarly, by reference to these sources, dog wardens, police officers, judges, and juries can enforce the statute fairly and evenhandedly. Consequently, we find that R.C. 955.11(A)(4)(a)(iii) is not unconstitutionally void for vagueness.

The judgment of the court of appeals is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

[3] The United Kennel Club registers the "American Pit Bull Terrier."

[4] Robert W. High, the aforementioned expert from the American Kennel Club, testified as follows:

"Defense counsel: Is there a registered — or a recognized breed of dog known as a pit bull dog?

"Mr. High: * * * [T]he AKC does not recognize this breed.

"Defense counsel: Okay. Why doesn't the AKC register that breed?

"Mr. High: Well, dating back even 25 years, there have been some very unsavory connotations relative to this breed, such as breeding the dogs for dog fighting, being a naturally pugnacious animal * * *. And to further magnify — This is dangerous in the hands of people that are not experienced in handling dogs.

"So I think the AKC felt they would be better off to wash their hands of the whole situation and not allow registry. * * *"