**STRANDWITZ, Appellee,**

v.

**OHIO BOARD OF DIETETICS et al., Appellants.**

**KINDNESS et al., Appellees,**

v.

**OHIO BOARD OF DIETETICS et al., Appellants.**

[Cite as *Strandwitz v. Ohio Bd. of Dietetics* (1992), 83 Ohio App.3d 183.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–681 and 92AP–682.

Decided Oct. 22, 1992.

*Seeley, Savidge & Aussem Co., Keith A. Savidge* and *Patrick McIntyre,* for appellees.

*Lee Fisher,* Attorney General, *Gregg B. Thornton* and *Anne C. Berry,* Assistant Attorneys General, for appellants.

JOHN C. YOUNG, Presiding Judge.

This matter is before this court upon the appeal of the Ohio Board of Dietetics et al. ("board"), from a judgment of the Franklin County Court of Common Pleas in favor of appellees George Kindness and William Strandwitz.

In 1987, with the enactment of R.C. Chapter 4759, the Ohio legislature created the Ohio Board of Dietetics, which issues licenses and regulates the practice of dietetics in Ohio. The board received separate complaints involving the alleged unlicensed practice of dietetics by appellees. Pursuant to R.C. 4759.09, the board notified each of the appellees in writing regarding the allegations and thereafter conducted a hearing pursuant to their requests.

Appellee Strandwitz filed a declaratory judgment action and requested injunctive relief in the Franklin County Court of Common Pleas. He sought a declaration that as a "clinical nutritionist" he was not engaged in the practice of dietetics and, thus, he was exempt from the licensing requirements of R.C. Chapter 4759. Appellee Strandwitz also asserted that R.C. 4759.02(B) was unconstitutionally vague and that R.C. Chapter 4759 deprived him of a vested property interest without due process of law. Appellee Kindness was then added

to the complaint as a new party-plaintiff. However, the appellees' motion for a temporary restraining order was denied by the common pleas court.

After the board conducted its preliminary investigation, it issued a letter to Kindness informing him that the board had concluded that he was in violation of R.C. 4759.02(A). The board also issued a letter to Strandwitz stating that it had found him in violation of R.C. 4759.02(A) and (B)(2).

Upon appeals to the common pleas court, the cases were consolidated. Appellees sought injunctive relief to enjoin the board from prohibiting appellee Strandwitz from using the titles "clinical nutritionist" or "nutritionist" and to prevent the board from pursuing any further administrative or legal action.

Subsequently, the board filed a motion to dismiss the appeal, which was filed pursuant to R.C. 119.12. The board also filed a counterclaim for injunctive relief, seeking to permanently enjoin appellees, respectively, from practicing dietetics in violation of R.C. Chapter 4759.

The parties entered into a stipulation of facts and a hearing was held before a referee. In his report and recommendation to the trial court, the referee concluded that R.C. Chapter 4759 was constitutional and that appellees were not entitled to the declaratory relief as requested. The referee suggested that the legislature may have intended that the terms "dietitian" and "nutritionist" to be synonymous and that all remaining issues should proceed on the premise that R.C. Chapter 4759 is constitutional. Thereafter, appellees filed objections to the report and recommendation of the referee.

In its April 3, 1992 decision, the trial court rejected the report and recommendation of the referee and concluded that those portions of R.C. Chapter 4759 applicable to the case herein are unconstitutional as applied to appellees. The trial court also stated that R.C. 4759.03 is unconstitutionally vague, since this statute requires that the five-member board include four "dieticians" whose professional livelihoods appear to be in direct competition with the "nutritionist" activity found improper herein.

Appellants now assert the following four assignments of error on appeal:

"1. The lower court erred in its determination that R.C. 4759.09 is unconstitutional because it 'requires a determination of violation of 4759.02 of the Revised Code before any meaningful hearing.'

"2. The lower court erred in its determination that R.C. 4759.03 is unconstitutional on the basis that the Board's composition is in direct competition with Plaintiff's/Appellees' nutrition activity.

"3. The lower court erred in its determination that R.C. 4759.03 and/or R.C. Chapter 4759 as a whole is unconstitutionally vague.

"4. The lower court erred in its determination that the Board lacked proper statutory authority to adopt rules establishing definitions for use in its enforcement of R.C. Chapter 4759."

The issues presented in appellants' first, second and third assignments of error raise constitutional challenges to R.C. Chapter 4759. It is well established that all legislative enactments must be afforded a strong presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224. Furthermore, statutes must be construed in conformity with the Ohio and United States Constitutions. *State v. Tanner* (1984), 15 Ohio St.3d 1, 15 OBR 1, 472 N.E.2d 689. Moreover, the party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail. *Anderson, supra,* 57 Ohio St.3d at 171, 566 N.E.2d at 1226.

In the first assignment of error, appellant asserts that the trial court erred by concluding that R.C. 4759.02 is unconstitutional, since it requires a determination by the board that the person under investigation is in violation of R.C. 4759.02 before any meaningful hearing is held.

R.C. 4759.09 provides as follows:

"The Ohio board of dietetics shall notify in writing any person determined by the board to be in violation of section 4759.02 of the Revised Code. The notification shall state that the person may request a hearing by the board within the amount of time specified by the board pursuant to division (A) of section 4759.05 of the Revised Code. If the person fails to request the hearing, or if the board determines from the hearing that the person is in violation of section 4759.02 of the Revised Code, the board may apply to the court of common pleas of the county in which the violation is occurring for an injunction or other appropriate restraining order to prohibit the continued violation of section 4759.02 of the Revised Code."

In *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, the United States Supreme Court analyzed the due process rights of a person whose Social Security disability benefits had been terminated by the administrative procedures established by the Secretary of Health, Education and Welfare for assessing whether a continuing need existed. After reviewing Eldridge's medical status, the state agency made a determination that the recipient was no longer disabled. The agency notified him that his benefits would terminate on a certain date. The notification advised him of his right to seek reconsideration of the termination.

However, instead of seeking reconsideration, Eldridge instituted a lawsuit challenging the constitutional validity of the administrative procedures for assessing the existence of a continuing disability established by the Secretary of Health,

Education and Welfare. The *Mathews* court held that an evidentiary hearing is not required prior to the termination of disability benefits and that the present administrative procedures fully comported with due process. *Id.* at 349, 96 S.Ct. at 909, 47 L.Ed.2d at 41. In its analysis, the Supreme Court emphasized that the fundamental requirement of due process is an opportunity to be heard at a meaningful time in a meaningful manner. Furthermore, the Supreme Court stated that an evidentiary hearing is not required prior to the termination of Social Security disability payments and the administrative procedures prescribed under the Act fully comport with due process. *Id.* at 321, 96 S.Ct. at 896, 47 L.Ed.2d at 25.

" '[D]ue process is flexible and calls for such procedural protections as the particular situation demands,' *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 [494]. [The United States Supreme Court in *Mathews* stated that] [r]esolution of the issue involving the constitutional sufficiency of administrative procedures prior to the initial termination of benefits and pending review, requires consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.,* 424 U.S. at 321, 96 S.Ct. at 896, 47 L.Ed.2d at 25.

It is appellees' contention that the procedure set forth in R.C. 4759.09 violates the constitutional standard of a hearing at a meaningful time in a meaningful manner. Appellees argue that R.C. 4759.09 requires the board to first make a determination that the person has violated R.C. Chapter 4759; then, the board is the same body which presides over the hearing, upon the written notification of the board and subsequent request by the person being investigated. It is appellees' argument that the hearing then becomes meaningless, since the board presiding over the fate of the individual is biased by the predisposition that the individual has violated R.C. 4759.09.

In applying the balancing test as set forth in *Mathews,* the private interest, which will be adversely affected, is the individual's right to continue in a specific occupation. However, under the procedural scheme as set forth in R.C. 4759.09, it is not until the board has received a complaint, made an investigation, made a preliminary determination, notified the individual, and conducted a hearing at the individual's request, that the board has the authority to proceed to the common pleas court for an injunction or other appropriate relief to prohibit the continued violation of R.C. 4759.02. Thus, the individual can continue in his occupation and is not deprived of any interest or property right up until the time that the board's actions are presented to the court of common pleas for the appropriate relief. It

is then that the common pleas court makes an independent decision as to whether the facts presented by the board warrant the curtailment or total restraint of the individual's alleged violative activity. Consequently, the individual will have had an opportunity to present his case to the board and, in most situations, to the common pleas court, before his right to engage in his occupation is even fully affected. Moreover, the purpose for the initial "determination" by the board is to decide whether there is a basis to conduct a hearing and, thus, is not an adjudication. This focus is different from the board's task of making a final determination that the individual was or was not engaging in activity violative of R.C. Chapter 4759. See R.C. 4117.02, 4117.11 and 4117.12.

The second consideration as set forth in *Mathews* is an examination of whether the procedure will reduce the chances of an erroneous decision being made. Under the procedural scheme set forth in R.C. 4759.09, the board, preliminarily, determines that a person is in violation of R.C. 4759.02 and sends him written notification. The person may then request a hearing in order to appear before the board and refute any evidence that may suggest that the activities in which he is engaged are in violation of R.C. Chapter 4759. The board only makes a final determination after the individual has had an opportunity to be heard. If the person fails to request the hearing or if the board determines from the hearing that the person is in violation of R.C. 4759.02, the board may seek an injunction or other appropriate relief in order to stop the continuation of the violation. Thus, even after the board makes its final determination, it is ultimately the decision of the common pleas court as to whether the activities engaged in by the person under investigation are violative of R.C. Chapter 4759 and thus should be curtailed or completely restrained.

In light of the fact that there are two entities, the board and the common pleas court, reviewing the circumstances which ultimately affect the person's rights, and when considering that the procedure allows an opportunity for the person under investigation to be heard, it is unlikely that an erroneous decision would be made under the procedures set forth in R.C. 4759.09. With these safeguards, R.C. Chapter 4759.09 meets the second prong of the balancing test as set forth in *Mathews*.

The final consideration is the government's interest, including the fiscal and administrative burden of an additional or substitute procedure. Pursuant to its police powers, it is in the state's interest to protect the safety, health, and welfare of the citizens of Ohio by regulating the practice of dietetics, as set forth in R.C. 4759.01. To institute a procedure whereby one administrative body would be receiving complaints, conducting the investigation, and making a preliminary determination, and another entity would be conducting hearings and making the final determination as to whether the person was in violation of R.C. Chapter

4759, would entail a tremendous fiscal burden on the taxpayers of Ohio. Although the hearing as set forth in R.C. 4759.09 is adjudicatory in nature, the final determination of the board has no significant consequences upon the individual under investigation until the board seeks redress through the common pleas court. Thus, if the board determines that a person is in violation of R.C. 4759.09, it may seek injunctive or other appropriate relief from the common pleas court. Consequently, it is the common pleas court that must independently decide if the person's activities are violative of R.C. Chapter 4759 and it is only at this juncture that the individual's right to continue in his occupation is affected.

Accordingly, since the procedures set forth in R.C. 4759.09 meet the constitutional criteria for due process as set forth in *Mathews,* appellants' first assignment of error is well taken and is sustained.

In the second assignment of error, appellants assert that the trial court erred when it concluded that R.C. 4759.03 was unconstitutional on the basis that the board's composition is in direct competition with the appellees' activities as nutritionists. R.C. 4759.03 provides, in pertinent part:

"There is hereby created the Ohio board of dietetics consisting of five members appointed by the governor with the advice and consent of the senate. * * *

" * * *

"Three members of the board shall be dietitians who have been actively engaged in the practice of dietetics in the state for at least five years immediately preceding their appointment; one member shall be an educator with a doctoral degree who holds a regular faculty appointment in a program that prepares students to meet the requirements of division (A)(5) of section 4759.06 of the Revised Code; and one member shall be a member of the general public who is not and never has been a dietitian, is not a member of the immediate family of a dietitian, does not have a financial interest in the provision of goods or services to dietitians, and is not engaged in any activity related to the practice of dietetics."

The trial court's April 3, 1992 decision states as follows:

"Upon consideration of the Referee's Report of 1–13–1992 and the Objections of Plaintiffs to that report filed 1–17–1992 (no Memo Contra or other response to the objection of Plaintiffs from Defendants appears in the Court file as of 3–20–1992), the recommendations of the Referee are rejected. Upon independent review of the record, the Court finds those portions of Chapter 4759 of the Ohio Revised Code involved in these cases to be unconstitutional as applied to Plaintiffs; specifically, Ohio Revised Code § 4759.09 requiring a determination of violation of § 4759.02 of the Revised Code before any meaningful hearing, and Ohio Revised Code § 4759.03, requiring that the 5–member Board contained 4 dieticians whose professional livelihood appears to be in direct competition with

the 'nutrition' activity found improper here. The Court recognizes that mere labeling of professional activity should not control the result, but neither should a Board created by unconstitutionally vague statute be entitled to establish definitions in the Ohio Administration Code who rectify the unconstitutional vagueness challenged by Plaintiffs.

"Counsel for Plaintiff's shall submit an appropriate Judgment Order pursuant to Rule."

■ The legislative purpose in providing administrative hearings before boards or commissions composed of a majority of persons from the same occupational field is to facilitate the process, since their collective, special knowledge is helpful in determining whether the person under investigation failed to conform to the minimum standards of that profession, licensing requirements or whatever, as set forth in the Revised Code. See *Arlen v. State* (1980), 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251. A review of the Revised Code demonstrates that nearly all of Ohio's professional licensing boards require that a majority of its board or commission be composed of members within that same profession.[1]

Although R.C. Chapter 4759 is devoted exclusively to the regulation of dietetics, R.C. 4759.01 envelopes a segment of activities referred to as "nutritional assessment," "nutritional counseling" and "nutritional education." It is appellees' contention that the practice of dietetics and the field of nutrition are separate and distinct, and, therefore, a "nutritionist" is not governed by the requirements set forth in R.C. Chapter 4759. However, it is this court's conclusion that although the fields of dietetics and nutrition may be separate and distinct, there is some duplication, or overlap, in the activities performed by each. Therefore, any person calling himself a "nutritionist" who engages in those activities as set forth in R.C. 4759.01, albeit nutritional assessment, nutritional counseling, and nutritional education, is governed by R.C. Chapter 4759 and must adhere to the requirements as set forth in that chapter to continue with these activities.

---

1. Accountancy Board, R.C. 4701.02; State Board of Examiners of Architects, R.C. 4703.02; State Auctioneers Commission, R.C. 4707.03; Barber Board, R.C. 4709.01; Board of Cosmetology, R.C. 4713.02; State Dental Board, R.C. 4715.02; Board of Embalmers and Funeral Directors, R.C. 4717.02; State Board of Nursing, R.C. 4723.04; State Board of Optometry, R.C. 4725.03; Optical Dispensing Board, R.C. 4725.42; State Board of Pharmacy, R.C. 4729.01; State Board of Psychology, R.C. 4732.02; State Board of Registration for Engineers and Surveyors, R.C. 4733.03; Chiropractic Examining Board, R.C. 4734.01; Ohio Real Estate Commission, R.C. 4735.03; State Board of Sanitarian Registration, R.C. 4736.02; State Veterinary Medical Board, R.C. 4741.02; Hearing Aid Dealers and Fitters Licensing Board, R.C. 4747.03; State Private Investigator and Security Guard Provider Advisory Commission, R.C. 4749.02; Board of Examiners of Nursing Home Administrators, R.C. 4751.03; Board of Speech Pathology and Audiology, R.C. 4753.03; Occupational Therapy, Physical Therapy, and Athletic Trainer Board, R.C. 4755.03; Counselor and Social Worker Board, R.C. 4757.03; Respiratory Care Board, R.C. 4761.02; Real Estate Appraisers Board, R.C. 4763.02.

Therefore, it is not the title or label which determines whether a person's activities are governed by R.C. Chapter 4759, but the activity itself. Accordingly, appellants' second assignment of error is well taken and is sustained.

In the third assignment of error, appellants assert that the trial court erred in its determination that R.C. Chapter 4759 is vague and, therefore, unconstitutional. The standards to be used to determine whether a law is void for vagueness were stated in *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115, wherein the court stated that an ordinance is void for vagueness, and thus violative of due process if it " * * * 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute' * * *" and " * * * because it encourages arbitrary and erratic arrests and convictions. * * *" See, also, *Columbus v. New* (1982), 1 Ohio St.3d 221, 1 OBR 244, 438 N.E.2d 1155; and *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552.

R.C. 4759.01(A) defines the "practice of dietetics" as follows:

"(A) 'The practice of dietetics' means any of the following:

"(1) Nutritional assessment to determine nutritional needs and to recommend appropriate nutritional intake, including enteral and parenteral nutrition;

"(2) Nutritional counseling or education as components of preventive, curative, and restorative health care;

"(3) Development, administration, evaluation, and consultation regarding nutritional care standards."

Ohio Adm.Code 4759-2-01 is a further delineation of the practice of dietetics:

"The following meanings apply to all rules promulgated by the Ohio Board of Dietetics, unless a specific paragraph explicitly defines or uses the word or term in a different manner.

"(A) 'Nutritional assessment' means the integrative evaluation of nutritionally relevant data to develop an individualized nutritional care plan. These data may include:

"(1) Nutrient intake;

"(2) Anthropometric measurements;

"(3) Biochemical values;

"(4) Physical and metabolic parameters;

"(5) Socio-economic factors;

"(6) Current medical diagnosis and medications; and

"(7) Pathophysiological processes.

"The mere collection of these data for use in assessment is not nutritional assessment and does not require a dietitian licensed under section 4759.06 of the Revised Code.

"(B) 'Nutritional counseling' means the advising of individuals or groups regarding nutritional intake based on individual needs.

"The distribution by an individual of written information prepared by a licensee is not nutritional counseling, and any person distributing the written information need not be licensed under Section 4759.06 of the Revised Code.

"(C) 'Nutritional education' means a planned program based on learning objectives with expected outcomes designed to modify nutrition-related behaviors.

"(D) 'Nutritional care standards' means policies and procedures pertaining to the provision of nutritional care in institutional and community settings.

"(E) 'Nutritional care' means the application of the science of nutrition in the health care of people."

Although Ohio Adm.Code 4759–2–01 expounds upon the interpretation of R.C. 4759.01(A), it is this court's responsibility to determine whether the trial court properly applied the constitutional standards for vagueness, as set forth in *Papachristou,* to R.C. 4759.01(A), the fundamental legislation enacted by the Ohio General Assembly.

Upon review, the language of R.C. 4759.01(A) is definite and does not lend itself to permit and encourage arbitrary and discriminatory enforcement. See *State v. Ferguson* (1991), 57 Ohio St.3d 176, 566 N.E.2d 1230. The language of R.C. 4759.01(A) gives a person of ordinary intelligence fair notice that if he engages in activities which include nutritional assessment, nutritional counseling or education, or the development, administration, evaluation and consultation regarding nutritional care standards, he must adhere to the licensure and discipline procedure as set forth in R.C. Chapter 4759. Moreover, a person practicing in the field of nutrition is more likely than the ordinary person to have a heightened awareness of what conduct constitutes these enumerated activities.

■ As previously stated, some activities as set forth in R.C. 4759.01(A) may overlap with activities which are associated with the field of nutrition. However, since the distinctions between the practice of dietetics and the field of nutrition are few, R.C. 4759.01(A) gives fair notice to nutritionists that if they engage in the activities as set forth in R.C. 4759.01(A), they must meet the licensing and discipline requirements as set forth in R.C. Chapter 4759 or further refrain from engaging in these enumerated activities. In the interest of protecting the health and safety of its citizens, the legislature may, pursuant to its police powers, regulate the business associated with advising consumers about food and nutri-

tion.   Accordingly, appellants' third assignment of error is well taken and is sustained.

■   In its fourth assignment of error, appellants assert that the trial court erred when it stated that the board lacked the proper statutory authority to adopt rules and establish definitions for use in its enforcement of R.C. Chapter 4759.

R.C. 4759.05 states, in relevant part:

"The Ohio board of dietetics shall:

"(A) Adopt, amend, or rescind rules pursuant to Chapter 119. of the Revised Code to carry out the provisions of this chapter * * *[.]"

■   Administrative agencies have the authority to promulgate rules and regulations pursuant to statutory authority.  *Ramsdell v. Ohio Civ. Rights Comm.* (1990), 56 Ohio St.3d 24, 563 N.E.2d 285.

The trial court specifically stated that " * * * [t]he Court recognizes that mere labeling of professional activity should not control the result, but neither should a Board created by [an] unconstitutionally vague statute be entitled to establish definitions in the Ohio Administrative Code who rectify the unconstitutional vagueness challenged by Plaintiffs."   In light of this court's disposition of appellants' third assignment of error, R.C. Chapter 4759, in particular R.C. 4759.03, does not meet the criteria for vagueness as set forth in *Papachristou* and, thus, is constitutional.   The fact that the board has promulgated Ohio Adm.Code 4759–2–01 to enhance the understanding of the terms set forth in R.C. 4759.03 is not an indication that the terms set forth in R.C. 4759.01(A) are ambiguous and thus fall below the standard for constitutionality as set forth in *Papachristou.*   Accordingly, appellants' fourth assignment of error is well taken and is sustained.

Based on the foregoing, appellants' first, second, third and fourth assignments of error are well taken and are sustained.   Appellees are not entitled to a declaratory judgment on constitutional grounds.   Accordingly, further proceedings should be conducted on the premise that R.C. 4759.01 *et seq.* is constitutional.   The judgment of the Franklin County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with law and this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and TYACK, JJ., concur.