**CITY OF CLEVELAND**

v.

**BERGMAN.**

Cleveland Municipal Court, Ohio,
Cuyahoga County.

No. 2000 CRB 049411.

Decided Jan. 29, 2001.

*Lauren C. Moore,* Chief City Prosecutor, and *James McGowan,* Assistant City Prosecutor, for the city.

*Kenneth J. Rexford,* Legal Aid Society of Cleveland, for defendant.

RONALD B. ADRINE, Judge.

This matter came on for hearing on the defendant's Crim.R. 12(B) motion to dismiss the complaint filed against him on constitutional grounds.

This court first notes that there is a strong presumption of constitutionality for enactments of the legislature. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, 1226. In order to prevail, therefore, the party challenging a legislative enactment on constitutional grounds must overcome that presumption. *Id.*

With that caveat in mind, the court turns to the argument brought forward by the defendant, Alan Bergman, in support of the motion now under consideration. The gravamen of the defendant's argument is that the term "cohabitation" used

in the definition of "family or household member"—one of the elements of the charge of domestic violence under R.C. 2919.25(C)—is unconstitutionally vague, as it is applied to him.

The defendant maintains that he and the complainant were never married ceremonially. He also insists that they were never married under the common law and that they are not the parents of any children in common. As a result, he argues, the only possible definition of "family or household member" found in the domestic violence statute that might be applied to him defines a "person living as a spouse" as "a person who * * * otherwise is *cohabiting* with the offender, or who otherwise has *cohabited* with the offender within five years prior to the date of the alleged commission of the act in question." (Emphasis added.) R.C. 2919.25(E)(1)(a) and (2).

It is the defendant's position that the term, "cohabitation," as drafted by the legislature in R.C. 2919.25(E)(2), and as interpreted by the Ohio Supreme Court, is so broad "that it is impossible to ascertain whether the evidence [that the city would produce to support the charge before the bench], whether voluminous or not, [would] be of any probative value on this uncertain term," and that, therefore, the charge itself cannot stand.

The defendant concedes that the Supreme Court of Ohio has defined the term "cohabitation" in its landmark decision in the lead case of *State v. Williams* (1997), 79 Ohio St.3d 459, 465, 683 N.E.2d 1126, 1130. However, he maintains that the Supreme Court decided that case on other grounds, specifically in an effort to resolve "weight and sufficiency" issues that had arisen in approximately ten appellate court cases from around the state, which had resulted in divergent conclusions. According to the defendant, a review of the "vagueness" issue presented here is one of first impression.

This court's research confirms that the defendant is correct in that assertion. We were unable to find a single Ohio opinion, and, in fact, a single opinion by any court nationally, that has addressed the issue of the constitutional vagueness of the term "cohabitation" in a context substantially similar to the one raised here.

Fortunately, however, the Supreme Court of Ohio has provided this state's courts with direction for addressing situations involving criminal enactments of the legislative authority that contain ambiguous language.

The case of *State v. Reeder* (1985), 18 Ohio St.3d 25, 18 OBR 21, 479 N.E.2d 280, presented a situation not unlike the one now before this court. Reeder was charged with a violation of Ohio's disorderly conduct statute, R.C. 2917.11(A)(1). That statute states:

"(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

"(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior."

The trial court in that case found Reeder guilty of disorderly conduct, noting "that [the defendant] at least acted 'reckless[ly]' and that his conduct 'at the very least, [was] turbulent.' " *Reeder* at 25, 18 OBR at 21, 479 N.E.2d at 281.

As in the instant case, the challenge in *Reeder* was specifically aimed at that portion of the statute that the defendant maintained vaguely, and, thus, unconstitutionally, prohibited certain behavior. He argued that the term "turbulent" was subject to multiple meanings and interpretations and that a person of ordinary intelligence and understanding was unable to ascertain which of those meanings and interpretations the legislature intended to prohibit when it enacted the statute. *Reeder, supra.*

The Allen County Court of Appeals agreed with the defendant's contention, finding that the disorderly conduct statute was unconstitutionally vague. That court had previously held that " ' "the term 'turbulent behavior' [was] not sufficiently definite to inform those of common intelligence of the point at which their conduct becomes impermissible and a violation of the [statute] * * *." ' *Findlay v. Zink* (Aug. 5, 1980), Hancock App. No. 5–79–35, unreported, at 5." *Reeder* at 26, 18 OBR at 22, 479 N.E.2d at 281. Reeder's conviction was, therefore, reversed. The prosecution, however, appealed to the Ohio Supreme Court, which accepted the case for review.

 The Supreme Court's reasoning in *Reeder* is extremely useful in sorting out the equities of the case at bar. In reversing the court of appeals' decision and reinstating the judgment of the trial court, the Ohio Supreme Court held that when determining whether a statute is unconstitutionally vague, " '[i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *Jordan v. De George* (1951), 341 U.S. 223, 231–232 [71 S.Ct. 703, 708, 95 L.Ed. 886, 892–893]." *Reeder* at 26, 18 OBR at 22, 479 N.E.2d at 282. "The courts * * * will assume [that] the legislature is using a word in its ordinary meaning and our task is to accord ' * * * its common, ordinary and usually accepted meaning in the connection in which it is used * * *.' *Mutual Bldg. & Invest. Co. v. Efros* (1949), 152 Ohio St. 369 [40 O.O 389, 89 N.E.2d 648], paragraph one of the syllabus. See, also, *Youngstown Club v. Porterfield* (1970), 21 Ohio St.2d 83, 86 [50 O.O.2d 198, 200, 255 N.E.2d 262, 264]." *Reeder*, 18 Ohio St.3d at 26–27, 18 OBR at 22, 479 N.E.2d at 282. "In determining whether a statute fairly informs a reasonable person of what is prohibited, courts should consider the challenged phrase in the context it is used in the law, and not as it stands alone." *Reeder* at 27, 18 OBR at 22, 479 N.E.2d at 282.

Further, the *Reeder* court, citing the United States Supreme Court, set forth the objective that courts should seek in applying the vagueness doctrine to the language employed in challenged criminal laws. It noted that the Supreme Court has held that " 'the root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.' " *Reeder* at 27, 18 OBR at 22–23, 479 N.E.2d at 282, quoting *Colten v. Kentucky* (1972), 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590.

■ Applying these principles to the term "cohabitation" as it is used in the criminal domestic violence context in the case before this court is somewhat more challenging then discerning the meaning of the term "turbulent" as it was used in the context faced by the *Reeder* court. This is true because "cohabitation" has both a commonly defined dictionary meaning and a legal connotation of some long-standing, both of which predate the enactment of the criminal laws that now employ it.

The Oxford Pocket Dictionary and Thesaurus, American Edition (1997), Oxford University Press, defines "cohabitation" as the noun which describes the state of living "together, esp. as an unmarried couple." Black's Law Dictionary (6 Ed.1990) 260, on the other hand, defines the term as "[t]o live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations."

The defendant in the case at bar accurately notes the difficulty that Ohio's courts and others have faced in their recent attempts to comport these definitions of the term "cohabitation" to its usage in a criminal rather than in its traditional civil context. See, *e.g.*, *State v. Williams*, 79 Ohio St.3d at 465, 683 N.E.2d at 1130, and *United States v. Costigan* (June 16, 2000), United States D. Maine, No. Crim. 00–9–B–H, unreported, 2000 WL 898455. The courts of Ohio have attempted to reconcile these definitions in recognition of the General Assembly's clear legislative intent to expand the meaning of "cohabitation" to reflect that domestic violence in the criminal context is activity arising out of the relationship of the parties rather than based upon the exact nature of their living circumstances. See *State v. Williams*, 79 Ohio St.3d at 464–465, 683 N.E.2d at 1129–1130.

■ This court is persuaded that the Supreme Court of Ohio's definition of "cohabitation" in *Williams*—that the essential elements of "cohabitation," for purposes of a domestic violence charge, are the sharing of familial responsibilities

and consortium—fairly informs a reasonable person of what is prohibited, is not unconstitutionally vague, and, most importantly, is controlling here.

Parenthetically, it should be noted that "cohabitation" is not enumerated as one of the activities that the domestic violence law seeks to forbid. Thus, the defendant's awareness of his status as a "cohabitant" in all likelihood is ultimately irrelevant.

■ The fact that the courts of this state are required to conduct a case-by-case analysis to determine if particular fact patterns meet the definition of "cohabitation," as our Supreme Court has authoritatively construed that term, should raise no significant objection. It is, after all, a function that subordinate courts perform in all similar situations where the Supreme Court has spoken.

*Motion to dismiss denied.*