OPINION
{¶ 1} Appellant, Rebecca Kim ("appellant") filed the instant appeal seeking reversal of her conviction on a single count of harboring an unreasonably loud or disturbing animal in violation of Columbus City Code ("C.C.C".) 2327.14.
 {¶ 2} C.C.C. 2327.14 provides, in relevant part, that "No person shall keep or harbor any animal which howls, barks, or emits audible sounds that are unreasonably loud or disturbing which are of such character, intensity, and duration as to disturb the peace and quiet of the neighborhood or to be detrimental to life and health of any individual." This case began with three separate criminal complaints filed in the Franklin County Municipal Court by Joseph Berardi ("Berardi"). Appellant and Berardi are neighbors living on Charmingfare Street in Columbus. Appellant is the owner of two dogs, one of which is a shitzu named "Lucky."
 {¶ 3} One complaint alleges that on May 13, 2004, Lucky "howled, barked or emitted audible sounds that were unreasonably loud or disturbing and were of such character, intensity and duration as to disturb the peace an (sic) quiet of the neighborhood of Joseph Berardi to wit: by barking so loud he had to go into his house." The other two complaints alleged that on May 22, 2004 and May 23, 2004, Lucky barked loud enough to wake Berardi up.
 {¶ 4} As to the May 13, 2004 incident, the testimony offered during the bench trial showed that after Berardi arrived home from work, he mowed his lawn, which he said took approximately twenty to twenty-five minutes. Lucky was outside in the back yard of appellant's house, and barked during this entire time. As Berardi finished mowing his lawn, George Urham ("Dr. Urham"), a veterinarian who takes care of Berardi's dogs, arrived on a house call. The two talked outside the house for a few minutes, and then went inside so Dr. Urham could administer vaccinations to Berardi's two dogs. Both Berardi and Dr. Urham testified that during the approximately one hour that Dr. Urham was at the house, Lucky never stopped barking. Both also testified that Lucky's barking was clearly audible even inside the house with the windows closed and the air conditioner running. This testimony was further bolstered by the testimony of Berardi's wife, Sachiko, who said she arrived home from work some time between 5:30 and 6:00 p.m., and that Lucky was barking constantly from the time she arrived home until shortly before 6:00 p.m.
 {¶ 5} Dr. Urham testified that he first noticed Lucky's barking when he arrived at Berardi's house, and that the barking could be heard along with the sound of Berardi's lawnmower. (Tr. at 45.) Dr. Urham characterized the barking as that of a dog that was over-excited. (Tr. at 48.) He stated that "the dog, I guess in human terms, didn't take a breath" during the time he was at Berardi's house. (Tr. at 49.) Dr. Urham further stated that "I witnessed a dog that was over excited, stuck in the excitement mode." (Tr. at 54.)
 {¶ 6} Appellant testified that she was out of town on May 13, 2004, and therefore cannot address the specific allegations that Lucky was outside and barking constantly between 4:30 and 6:00 p.m. on that date. However, she did testify that in her experience, Lucky has never barked constantly for that extended a period of time. Appellant also offered testimony from Linda Clem and Karen Maier, who are other residents of the neighborhood. Both testified that they were at their respective homes during at least parts of the day on May 13, 2004, and that at no time were they aware of any persistent barking from Lucky, although neither could testify with any certainty regarding the time period between 4:30 and 6:00 p.m. Appellant also offered the testimony of Jeongah Kim (no relation to appellant), who testified that she was at appellant's house some time around the relevant time period on May 13, 2004, and that she had no recollection of hearing Lucky barking at that time.
 {¶ 7} The overall tenor of the testimony shows that the relationship between Berardi and appellant has become quite strained over the years. At one point, Berardi called the Humane Society to have them look into the dogs' condition, although he denied making any allegation that appellant was mistreating her dogs. At another time, Berardi called the Columbus Police non-emergency dispatch line for the purpose of ensuring that there would be an official recording of Lucky barking — a copy of that recording was obtained from the Columbus Police Department and entered into evidence in support of one of the other charges. Berardi has taken to using a camcorder and audio recorder to document all of Lucky's activities, and appellant has taken to photographing Berardi as he engages in these activities.
 {¶ 8} The trial court found appellant not guilty of the charges stemming from the May 22 and May 23 incidents, concluding that Lucky's barking was not of sufficient duration in time to support those charges. The trial court convicted appellant on the May 13 charge, concluding that the approximate one and a half hour duration of Lucky's barking on that day was sufficient to establish a violation of C.C.C. 2327.14. As sentence, the trial court imposed a fine of one hundred dollars plus costs.
 {¶ 9} Appellant then filed this appeal, alleging three assignments of error:
 I.THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS BECAUSE COLUMBUS CITY CODE SECTION 2327.14 IS UNCONSTITUTIONAL IN THAT IT IS IMPERMISSIBLY VAGUE ON ITS FACE AND AS APPLIED, AND VIOLATES THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES
AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
 II.THE CITY OF COLUMBUS PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION FOR NOISY ANIMALS AND THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE DEFENDANT WAS DEPRIVED OF HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND DENIED HER RIGHT TO A FAIR TRIAL.
 {¶ 10} All legislative enactments enjoy a strong presumption in favor of their constitutionality, and a party seeking to have such an enactment declared unconstitutional must prove the enactment's unconstitutionality beyond a reasonable doubt. State v. Anderson (1991),57 Ohio St.3d 168, 566 N.E.2d 1224. If an ordinance is challenged as being unconstitutional due to vagueness, courts must apply all presumptions and rules of construction so as to uphold the ordinance if at all possible. City of Columbus v. Kendall (2003),154 Ohio App.3d 639, 2003-Ohio-5207, 798 N.E.2d 652. In determining whether an ordinance violates the constitutional requirement of definiteness, the question is whether the ordinance gives a person of ordinary intelligence fair notice that contemplated conduct is forbidden by the ordinance. Id., citing United States v. Harriss (1954), 347 U.S. 612, 98 L.Ed.2d 989,74 S.Ct. 808.
 {¶ 11} We have previously considered whether an ordinance that is substantially identical to C.C.C. 2327.14 was unconstitutionally vague.Whitehall v. Zageris, Franklin App. No. 83AP-805. In that case, we held Whitehall's barking dog ordinance did include standards sufficient to place an ordinary person on notice of what conduct the ordinance prohibited because the ordinance was limited in application to the specific neighborhood in which the noise occurred, incorporated an objective standard by prohibiting only those noises which were unreasonably loud or disturbing, and gave specific factors to be considered to measure the level of disturbance by the character, intensity, and duration of the noise.
 {¶ 12} Appellant argues that Zageris should be reconsidered in light of the tremendous increase in the number of households with pets since that case was decided. Appellant points to decisions from other courts, including the 11th District Court of Appeals in State v.Ferraiolo (2000) 140 Ohio App.3d 585, 748 N.E.2d 584, to support her contention that, given the commonness of dog ownership today, more precisely written statutes and ordinances are needed to place owners on notice of what level of noise is prohibited. However, we find the rationale set forth in Zageris is as valid today as it was in 1985, increased dog ownership notwithstanding. The inclusion of identifiable standards defining the geographical application of the ordinance (the neighborhood where the noise occurs), an objective standard of prohibited conduct (unreasonably loud or disturbing noises), and setting forth factors to measure the level of disturbance, in C.C.C. 2327.14 is sufficient to establish that the ordinance is not unconstitutional either on its face or as applied. Consequently appellant's first assignment of error is overruled.
 {¶ 13} In her second assignment of error, appellant argues that her conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. As set forth in State v. Jenks (1991),61 Ohio St.3d 259. 574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 14} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 16} As previously stated, C.C.C. 2327.14 prohibits keeping an animal that "howls, barks, or emits audible sounds that are unreasonably loud or disturbing which are of such character, intensity, and duration as to disturb the peace and quiet of the neighborhood or to be detrimental to life and health of any individual." In this case, Berardi and Dr. Urham both testified that Lucky was barking without any letup at all for somewhere between one hour and one and one-half hours, and that this barking could be heard even in Berardi's house with the windows closed. Viewed in a light most favorable to the prosecution, a reasonable trier of fact could have concluded that Lucky's barking was unreasonably loud and was of such character, intensity, and duration as to disturb the peace and quiet of the neighborhood.
 {¶ 17} Appellant argues that in his complaint, Berardi alleged that the barking was loud enough to have forced him to go inside the house, an allegation that was not established by the evidence. However, it was not necessary to prove that Berardi was forced to go inside the house — the ordinance only requires a showing that the barking disturbed the peace and quiet of the neighborhood or was detrimental to the life and health of an individual.
 {¶ 18} Appellant also argues that the testimony of Linda Clem, Karen Maier, and Jeongah Kim showed that Lucky could not have been barking for the time period and intensity to which Berardi and Dr. Urham testified, because they would have been able to hear it. However, the trial court was in the best position to evaluate the testimony offered and determine whether those witnesses were in a position to say with certainty that they would have heard the barking if it had occurred, and to weigh their testimony against that of Berardi and Dr. Urham claiming it did occur. We cannot say that the trial court lost its way in determining that the incident occurred for the time period and intensity described.
 {¶ 19} Therefore, we conclude that appellant's conviction was supported by sufficient evidence, and was not against the manifest weight of the evidence. Consequently, appellant's second assignment of error is overruled.
 {¶ 20} In her third assignment of error, appellant argues that she was deprived of her right to effective assistance of counsel and to a fair trial. Appellant points to three alleged deficiencies in her trial counsel's conduct to support this contention. First, appellant argues that trial counsel failed to request an order separating the witnesses. Second, appellant argues that counsel failed to make a motion for acquittal pursuant to Crim. R. 29 at the conclusion of the state's case. Finally, appellant argues that counsel failed to ensure that her father's videotaped deposition was properly entered into evidence for consideration by the trial court.
 {¶ 21} In order to prevail on a claim of ineffective assistance of counsel, appellant must show that her counsel's performance fell below an objective standard of reasonableness, and that she suffered prejudice as a result. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. In evaluating trial counsel's performance, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Strickland, 466 U.S. at 689. In order to show prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 22} In this case, even assuming trial counsel's performance was somehow deficient, appellant has not demonstrated that the result of the trial would have been different but for those deficiencies. There is nothing in the record to demonstrate that failing to request separation of the witnesses affected any of the testimony that was offered. As outlined in our discussion of appellant's second assignment of error regarding sufficiency and weight of the evidence, there is no reason to believe that a motion for acquittal would have been granted had it been made. Finally, with respect to appellant's father's videotaped deposition, the videotape is not part of the record before us, so we cannot say whether its contents would have altered the outcome of the trial, but the record clearly indicates that counsel took the steps necessary to direct the court's attention to the videotape, and there is nothing in the record that would indicate that the trial court did not watch the videotape.
 {¶ 23} Having overruled appellant's assignments of error, we affirm the decision of the trial court convicting appellant of keeping a noisy animal in violation of C.C.C. 2327.14.
Judgment affirmed.
PETREE and McGRATH, JJ., concur.