[Cite as *State v. Gribben*, 2020-Ohio-3083.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  13-19-50

    v.

JONATHAN R. GRIBBEN,               O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Seneca County Common Pleas Court
Trial Court No. 19 CR 0068

Judgment Affirmed

Date of Decision:  May 26, 2020

---

APPEARANCES:

    *Jennifer L. Kahler* for Appellant

    *Angela M. Boes* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Jonathan R. Gribben ("Gribben"), brings this appeal from the November 26, 2019 judgment of the Seneca County Common Pleas Court sentencing him to serve a three year prison term after a jury convicted Gribben of Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony. On appeal, Gribben argues that there was insufficient evidence presented to convict him, and that his conviction was against the manifest weight of the evidence.

*Background*

{¶2} On April 3, 2019, Gribben was indicted for Felonious Assault in violation of R.C. 2903.11(A)(1), a second degree felony. Gribben entered a plea of not guilty and proceeded to a jury trial, which was held October 28-29, 2019. Following the presentation of evidence, the jury found Gribben guilty as charged.

{¶3} On November 26, 2019, Gribben was sentenced to serve three years in prison. A judgment entry memorializing his conviction was entered that same day. It is from this judgment that he appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's conviction is against the manifest weight of the evidence because he did not knowingly cause harm to the victim.**

**Assignment of Error No. 2**
**Whether Appellant's conviction is not supported by sufficient evidence when appellant did not knowingly cause harm to the victim.**

{¶4} We elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶5} In his second assignment of error, Gribben argues that there was insufficient evidence presented to convict him. Specifically, he contends that he did not knowingly cause serious physical harm to the victim in this matter.

Standard of Review

{¶6} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.); *see also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *State v.*

*Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.").

Controlling Statute

{¶7} In this case, Gribben was convicted of Felonious Assault in violation of R.C. 2903.11(A)(1), which reads as follows.

**(A)  No person shall knowingly do either of the following:**

**(1)  Cause serious physical harm to another or to another's unborn[.]**

Evidence Presented by the State

{¶8} On the evening of October 30, 2018, Gribben and his girlfriend were drinking alcohol at the "R Place Sports Bar & Grill" in Fostoria.  The bartender had seen Gribben in the bar before, but not enough to know who he was; however, the bartender was familiar with Gribben's girlfriend.

{¶9} At some point in the evening, Daniel S. came to the bar alone, ordered a beer and sat by himself at a high-top table on a barstool that was approximately six feet away from the bar.  The barstool was roughly three feet high.  Daniel consumed his beer while watching television.  He did not know Gribben and had never met him.

{¶10} While Daniel was seated at the high-top table, Gribben bumped into him on three occasions as Gribben walked around the bar, even though the bar had only around ten people inside and there was ample space for Gribben to maneuver.

Daniel thought the first time might have been an accident, but the subsequent incidents were with increased force. The third time Gribben bumped into Daniel, Daniel's arm was knocked forward. Daniel then asked Gribben why he had bumped him, and Gribben turned and "growled" at him.

{¶11} Daniel got the attention of the bartender and informed her of the issue. The bartender had previously noted that Gribben appeared intoxicated when he arrived at the bar, and she was aware that he had taken a drink from another patron's drink, perhaps mistakenly thinking it was his own. When Gribben tried to get another drink, the bartender informed him that she would not serve him anymore. Gribben asked why she would no longer serve him, and the bartender indicated that it was partly because of Gribben's actions bumping into Daniel.

{¶12} Gribben then sat down by his girlfriend at the bar and tried to get her to leave, but she was not ready. After a few minutes, Gribben got out of his seat and walked toward the front door of the establishment. On his way, he powerfully shoved Daniel with both arms, knocking Daniel out of his barstool and onto the ground. Gribben walked quickly toward the exit, then began to jog away out the door.

{¶13} The bouncer, who had been playing pool because there were not many patrons in the bar to observe, heard the commotion and ran outside and yelled for Gribben to stop. Gribben looked back at the bouncer but then ran off.

{¶14} Daniel tried to stand after he was knocked to the ground, but was unable. Police were called to the scene and they requested medical assistance due to Daniel's condition. Daniel was taken to the hospital and an x-ray revealed that he had a hip fracture. The injury required surgery the next day, with three pins being installed in Daniel's hip. Unfortunately the bone later collapsed and Daniel had to have a second surgery for a full hip replacement. As a result of the incident, Daniel spent over a week total in the hospital, was in significant pain for weeks, underwent physical therapy, and had a seven-inch scar.

{¶15} The bar was equipped with numerous security cameras. Video recordings from two angles were introduced into evidence showing Gribben shove Daniel off the barstool. From the forward angle the force appears significant. The bartender described it like a linebacker hitting someone in a football game. Notably, descriptions indicated that Gribben was approximately 250 pounds at the time and Daniel was only around 165 pounds, making Gribben significantly larger. Gribben was also much younger than Daniel.

Analysis

{¶16} Gribben claims that there was insufficient evidence presented to establish that he knowingly caused serious physical harm to Daniel. He first argues that he was extremely intoxicated and his intoxication prevented him from

possessing the mental culpability necessary to commit felonious assault. Contrary to his argument, R.C. 2901.21(E) states that

> **Voluntary intoxication *may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense*. Voluntary intoxication does not relieve a person of a duty to act if failure to act constitutes a criminal offense. Evidence that a person was voluntarily intoxicated may be admissible to show whether or not the person was physically capable of performing the act with which the person is charged.**

(Emphasis added.)

{¶17} Based on R.C. 2901.21(E), Gribben's intoxication could *only* be taken into account to determine whether he was physically capable of performing the act with which he was charged, specifically shoving Daniel out of his barstool. The video evidence and testimony presented clearly established that Gribben did, in fact, deliberately shove Daniel out of his barstool, thus his intoxication argument is unavailing.

{¶18} Notwithstanding the plain text of R.C. 2901.21, Gribben argues that "Ohio appellate districts have been in disagreement" with regard to whether the mental state of knowingly constitutes a specific intent crime for which voluntary intoxication may constitute a defense, citing as support older appellate decisions such as *State v. Fugate*, 12th Dist. Butler App. No. CA97-02-031, 1998 WL 281336, *State v. Williams*, Greene App. No. 94 CA 65 (June 14, 1995), and *State v. Norman,* 7 Ohio App.3d 17, 19–20, 453 N.E.2d 1257 (1982). While there may have been

some disagreement when those cases were decided, all of those cases predate the amendments to R.C. 2901.21, which contain the preceding controlling statutory language and thus the cases cited by Gribben have no persuasive value here. *State v. Hill*, 10th Dist. Franklin No. 09AP-398, 2010-Ohio-1687, ¶ 28. However, even if we ignored the plain statutory language regarding voluntary intoxication, the evidence presented was sufficient to find that Gribben was not so intoxicated that he was unable to form the culpable mental state of knowingly. Gribben had the wherewithal to engage with the bartender regarding why he was prevented from acquiring more alcohol and he directed his anger over the situation at the person who he perceived had slighted him. The video also shows that Gribben's shove was very deliberate. Thus this argument is not well-taken.

{¶19} Next, Gribben contends that the evidence did not establish that he "knowingly" caused serious physical harm. In fact, he argues that there was no indication his intent was to cause any harm at all.

{¶20} Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." "Additionally, a defendant acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur." *State v. Anderson*, 10th Dist. Franklin No. 10AP-302, 2010-Ohio-5561, ¶ 13, citing *State v. Edwards*, 83 Ohio App.3d 357, 361, 614

N.E.2d 1123 (10th Dist. 1992). Thus, "felonious assault under R.C. 2903.11(A), combined with the definition of 'knowingly' found in R.C. 2901.22(B), does not require that a defendant intend to cause 'serious physical harm,' but that the defendant acts with an awareness that the conduct probably will cause such harm." *Id.*; *State v. Gray*, 2d Dist. Montgomery No. 26139, 2016-Ohio-1419, ¶ 41; *State v. Mpanurwa*, 2d Dist. No. 27357, 2017-Ohio-8911, ¶ 11.

{¶21} When viewing the evidence in the light most favorable to the State as we are directed, we cannot find that there was insufficient evidence presented for a juror to determine beyond a reasonable doubt that Gribben committed his actions "knowingly." Gribben bumped into Daniel on three occasions prior to the shoving incident despite having plenty of room to maneuver about the bar. After Gribben was told that he could not purchase any more drinks, he tried to get his girlfriend to leave and she was not ready. Then Gribben got up, walked toward the door and powerfully shoved Daniel off his barstool.

{¶22} Daniel was a much smaller and older man, seated alone on a stool three feet off the ground. He did not have time to defend himself. The video shows Gribben using significant force when shoving Daniel and that Gribben then fled. Under these circumstances, Gribben should have been aware that his conduct would probably result in such harm. *See State v. Mpanurwa*, 2d Dist. Montgomery No. 27357, 2017-Ohio-8911, ¶¶ 11-13. The fact that he hurriedly fled the scene also

indicates some consciousness of guilt. Therefore, we cannot find that there was insufficient evidence presented to find that Daniel acted "knowingly," and Daniel's second assignment of error is overruled.

*First Assignment of Error*

{¶23} In Gribben's first assignment of error, he contends that even if there was sufficient evidence presented to convict him of Felonious Assault, his conviction was against the manifest weight of the evidence.

Standard of Review

{¶24} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶25} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against

the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

**{¶26}** Gribben testified on his own behalf at trial, indicating that on the evening in question he was drinking with his girlfriend at a bar called "High Scores" in Fostoria where he consumed numerous alcoholic beverages. Gribben and his girlfriend later went to the "R" bar.

**{¶27}** Gribben testified that he was extremely intoxicated, that he did not know Daniel, and that he did not recall bumping into Daniel at all. Gribben testified that he became angry when the bartender refused to serve him and he acknowledged that he shoved Daniel while leaving the bar. Gribben acknowledged jogging out of the bar and then running off. He also acknowledged that someone came outside the bar and yelled after him.

**{¶28}** Gribben testified that he did not think he had hurt Daniel, and that it was months later, after his arrest, when he learned the extent of Daniel's injuries. He testified that he did not knowingly injure Daniel, and that he did not intend to cause any harm, let alone serious physical harm.

Analysis

{¶29} In contending that his conviction was against the manifest weight of the evidence, Gribben again argues that he was too intoxicated to form the culpable mental state, and that he did not knowingly cause serious physical harm.

{¶30} As we stated in the previous assignment of error, R.C. 2901.21(E) prevents voluntary intoxication from being taken into consideration when considering a culpable mental state, thus this argument is unavailing. *See also State v. Hill*, 10th Dist. Franklin No. 09AP-398, 2010-Ohio-1687, ¶ 28. Even if we did consider it the jury was in the better position to determine the credibility regarding Gribben's intoxication and we must defer to the jury's credibility determinations. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶31} Regarding Gribben's contention that he did not knowingly cause serious physical harm, the evidence does not weigh heavily against the conviction and the evidence does not establish that the jury clearly lost its way in this matter. Gribben forcefully shoved a smaller, older man out of a high-top barstool when the older man was completely unprepared. Then, Gribben fled the scene indicating consciousness of his actions.

{¶32} Moreover, the jury was able to see and evaluate the testimony of both Gribben and the victim and the jury was able to see video of the incident itself. Based upon all of the evidence presented, we cannot find that Gribben's conviction

for Felonious Assault was against the manifest weight of the evidence. Therefore his first assignment of error is overruled.

*Conclusion*

**{¶33}** For the foregoing reasons Gribben's assignments of error are overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**