[Cite as *In re A.P.*, 2020-Ohio-5423.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.P. | : | APPEAL NOS. C-190551 |
| | | C-190552 |
| | : | C-190553 |
| | | TRIAL NOS. 18-003331 |
| | : | 18-003332 |
| | | 18-004036 |
| | : | |
| | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  November 25, 2020

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Raymond T. Faller,* Hamilton County Public Defender, *Jessca Moss*, Assistant Public Defender, and *Julie Kahrs Nessler,* Assistant Public Defender, for Defendant-Appellant A.P.

**CROUSE, Judge.**

{¶1} Defendant-appellant A.P. was adjudicated delinquent for acts which, had they been committed by an adult, would have constituted trafficking in a counterfeit controlled substance in violation of R.C. 2925.37(B), possession of a counterfeit controlled substance in violation of R.C. 2925.37(A), and possession of drug paraphernalia in violation of R.C. 2925.14. He has appealed, arguing in three assignments of error that (1) he was denied the right to due process under the United States Constitution and the Ohio Constitution because R.C. 2925.37(B) is unconstitutionally vague and results in the arbitrary and discriminatory enforcement of the law; (2) his adjudication was based upon insufficient evidence; and (3) his adjudication was against the manifest weight of the evidence.

{¶2} For the reasons discussed below, we overrule all three assignments of error and affirm the judgments of the trial court.

### *Factual Background*

{¶3} Officer Emily Ward was the only witness to testify at trial. Ward and her partner were flagged down by an individual who thought a property that he owned had been broken into. A.P. lived at the property. The officers determined that A.P. had broken a window because he had forgotten his key, and that no burglary had occurred. During their investigation, the officers discovered that A.P. had a warrant for domestic violence. They arrested A.P. and searched him. The search revealed a digital scale and two baggies containing white powdery substances.

{¶4} Ward testified that the substances were wrapped up "real well" in plastic. She described the baggies as "double-bagged," where the inside bag is

2

"twisted" and "tied off." She testified that the way the substances were packaged was consistent with how she typically has found drugs to be packaged. While examining the first baggie at trial, she testified, "This is probably hardened a little bit since it's been a whole year, and it was moist and kind of a little bit wet on there." She described the substance as looking like "crack cocaine where it's got that like brownish burnt mixture to it almost. It's not like a white fresh powder or heroin, like a grayish powder, but it did look like crack cocaine with the tint of color it has in there and kind of like messy, dirty look."

{¶5} Regarding the second baggie, Ward testified that it also contained a white substance, and she assumed that it was a "crack-type mixture." Ward determined that both baggies were made to look like crack cocaine because of how they were wrapped up and "manipulated" by A.P.

{¶6} At trial, the state played a video recording of Ward's body camera. In the video, A.P. told the officers that the substances were crushed up pills mixed with grease or oil and that he made the substances because he was "bored."

{¶7} The magistrate adjudicated A.P. delinquent for trafficking in a counterfeit controlled substance, possession of a counterfeit controlled substance, and possession of drug paraphernalia. A.P. filed objections to the magistrate's decision. At the objection hearing, the juvenile court overruled A.P.'s objections, but expressed doubts as to the constitutionality of R.C. 2925.37:

> I'm going to affirm the trafficking charge and invite you to appeal it because I think this is an issue that needs to be settled in the First District, because I think the wording of that statute is perhaps too broad

3

for a fact finder to really come to the conclusion that someone made a substance for the purpose of trafficking.

* * *

I would like to have the First District review that and determine whether or not that particular law is too vague when it uses the word 'made' as it relates to trafficking.

### *Sufficiency of the Evidence*

{¶8}    For ease of discussion, we address A.P.'s assignments of error out of order.  In his second assignment of error, A.P. contends that his adjudications were based upon insufficient evidence.

{¶9}    The standard of review when determining whether a juvenile defendant's adjudication was based upon sufficient evidence is the same as the standard used in adult criminal cases.  *In re D.C.,* 2019-Ohio-4860, 149 N.E.3d 989, ¶ 6 (1st Dist.).  "We must determine 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.* at ¶ 6, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E. 2d 492 (1991), paragraph two of the syllabus.

{¶10}  A.P. was adjudicated delinquent for violating R.C. 2925.37(B), which provides, "No person shall knowingly make, sell, offer to sell, or deliver any substance that the person knows is a counterfeit controlled substance."  "Counterfeit controlled substance" includes "[a]ny substance other than a controlled substance that a reasonable person would believe to be a controlled substance because of its

similarity in shape, size, and color, or its markings, labeling, packaging, distribution, or the price for which it is sold or offered for sale." R.C. 2925.01(O)(4).

{¶11} A.P. claims that he did not knowingly make a counterfeit controlled substance. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶12} In the body camera video, A.P. admitted to the officers that he made the substances by crushing up pills and mixing them with oil or grease. Ward testified that the substances appeared to be controlled substances of some kind, perhaps crack cocaine, and described the appearance of the substances. Furthermore, Ward testified that the substances were packaged in plastic baggies consistent with how drugs are packaged for sale, and a digital scale was recovered from A.P.'s person, which is also indicative of drug trafficking. The state presented sufficient evidence that A.P. knowingly made counterfeit controlled substances.

{¶13} Next, R.C. 2925.37(A) provides, "No person shall knowingly possess any counterfeit controlled substance." A.P. argues that the state presented no evidence that he knew the substances resembled a controlled substance. Ward's testimony, the body camera video, and the substances themselves (which were admitted as exhibits) provided sufficient evidence that the substances fell under the R.C. 2925.01(O)(4) definition of counterfeit controlled substances.

{¶14} Finally, A.P. was adjudicated delinquent for possessing drug paraphernalia in violation of R.C. 2925.14(A)(6), which states that "drug paraphernalia" includes "a scale or balance for weighing or measuring a controlled substance."

(B) In determining if any equipment, product, or material is drug paraphernalia, a court or law enforcement officer shall consider, in addition to other relevant factors, the following:

\* \* \*

(2) the proximity in time or space of the equipment, product, or material, or of the act relating to the equipment, product, or material, to a violation of any provision of this chapter.

R.C. 2925.14(B)(2).

{¶15} The scale was found on A.P.'s person along with two counterfeit controlled substances. His adjudication for possession of drug paraphernalia was based upon sufficient evidence.

{¶16} The first assignment of error is overruled.

### *Manifest Weight of the Evidence*

{¶17} In his third assignment of error, A.P. contends that his adjudications were against the manifest weight of the evidence because (1) the substances are not controlled substances and he never tried to sell the substances, (2) Ward's inexperience and contradictory testimony made her testimony untrustworthy, and (3) the juvenile court found that R.C. 2925.37 was unconstitutionally vague.

{¶18} "The standard of review when determining whether a juvenile court's adjudication of delinquency was against the manifest weight of the evidence is the same as that in an adult criminal case." *In re D.C.,* 2019-Ohio-4860, 149 N.E.3d 989, at ¶ 11. The appellate court must:

[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine

whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed and a new trial ordered.

*Id.* Reversal on manifest-weight-of-the-evidence grounds is reserved for "the exceptional cases in which the evidence weighs heavily against conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶19} A.P. states that the substances tested negative for common controlled substances and that he never tried to sell the substances. Both of those facts are irrelevant. None of the charges required the state to prove that the substances were controlled substances. The statute only requires the state to prove that the shape, size, and color of the substances would lead a reasonable person to believe that they were controlled substances. Also, the state was not required to prove that A.P. attempted to sell the substances. *See* R.C. 2925.37(B) ("No person shall knowingly make, sell, offer to sell, *or* deliver"). (Emphasis added.)

{¶20} Regarding Ward's qualifications, she testified that she went through an eight-month training period where she was in contact with many different types of drugs and observed them in different forms. Also, although she had only been on the job for two months, she testified that she had seen drugs "every other day for two months," and had "extensive training about what drugs look like, how they're made, how they're manufactured, how they're put together for sale, so it wasn't nothing [sic] that was a surprise or anything * * * that I wasn't able to recognize."

{¶21} A.P. also argues that Ward's testimony was "inconsistent" and "contradictory" because her description of the substances changed during her

7

testimony. The inconsistencies claimed to exist by A.P. are not really inconsistencies at all. As Ward testified, she merely provided more detail regarding the appearance of the substances.

{¶22} Finally, A.P. argues that the juvenile court's statement that "the wording of the statute is too broad for a fact finder to really come to the conclusion that someone made a substance for the purpose of trafficking," makes his trafficking adjudication against the manifest weight of the evidence. The court's statement did not amount to a finding that R.C. 2925.37(B) is unconstitutionally vague. Manifest-weight review concerns the weighing of the evidence and whether the fact finder "clearly lost its way" and created a "manifest miscarriage of justice" in how it resolved conflicts in the evidence. *See In re D.C.,* 2019-Ohio-4860, 149 N.E.3d 989, at ¶ 11. Despite its concerns over the constitutionality of the statute, the court adjudicated A.P. delinquent for violating R.C. 2925.37(B). A.P. has failed to demonstrate that the juvenile court "clearly lost its way" in reaching that result. The third assignment of error is overruled.

### The Constitutionality of R.C. 2925.37(B)

{¶23} In his first assignment of error, A.P. contends that he was denied the right to due process under the United States and Ohio Constitutions because R.C. 2925.37(B) is unconstitutionally vague and results in the arbitrary and discriminatory enforcement of the law.

{¶24} "Legislative enactments must be afforded a strong presumption of constitutionality." *State v. Collier,* 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). "If at all possible, statutes must be construed in conformity with the Ohio and United

States Constitutions." *Id.* "The party asserting that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *Id.*

{¶25} A.P. argues that R.C. 2925.37 is void for vagueness both on its face and as applied to the facts of his case because it provides no standard of conduct for what constitutes "making" a counterfeit controlled substance.

{¶26} "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

{¶27} A facial challenge requires that "the challenging party * * * show that the statute is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, ¶ 15, quoting *State v. Anderson*, 57 Ohio St.3d 168, 171, 566 N.E.2d 1224 (1991). "The challenger must show that upon examining the statute, an individual of ordinary intelligence would not understand what he is required to do under the law." *Id.* Therefore, the defendant "must prove, beyond a reasonable doubt, that the statute was so unclear that he could not reasonably understand that it prohibited the acts in which he engaged." *Carrick* at ¶ 15. An as-applied challenge focuses on the application of the statute to the facts of the case at hand. *Id.* at ¶ 16.

{¶28} In *Carrick*, the Ohio Supreme Court determined that the "making unreasonable noise" provision of R.C. 2917.11(A)(2) was not unconstitutionally vague

because it incorporated an objective standard by prohibiting only noise that is unreasonable, enumerated "specific factors—inconvenience, annoyance, or alarm to another—with which to judge the level of the disturbance," and required a mental state of recklessness. *Id.* at ¶ 20. As applied to the defendant's case, the court held that the state presented sufficient evidence that the music coming from the defendant's house inconvenienced and annoyed his neighbors. *Id.* at ¶ 22. "A person of ordinary intelligence would understand that R.C. 2917.11(A)(2) proscribes playing music at a late hour at such a volume that it keeps the neighbors from sleeping, causes windows to vibrate on a house a quarter of a mile away, and prompts numerous calls of complaint to authorities." *Id.*

{¶29} "Make" is not defined in R.C. Chapter 2925. "Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them." *State v. Dorso*, 4 Ohio St.3d 60, 62, 446 N.E.2d 449 (1983). Webster's defines "make" as "to bring into being by forming, shaping, or altering material," or to "put together from components." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/make?src=search-dict-hed (accessed October 30, 2020).

{¶30} Regarding A.P.'s facial challenge, R.C. 2925.37(B) is similar to the law upheld by the Ohio Supreme Court in *Carrick*. R.C. 2925.37(B) incorporates an objective standard by only prohibiting substances that a "reasonable" person would believe to be drugs, enumerates specific factors for the fact finder to consider in determining whether a substance is a counterfeit controlled substance ("similarity in shape, size, and color"), and requires a mental state of "knowingly." A.P. has failed to demonstrate that "an individual of ordinary intelligence would not understand

what he is required to do under the law." *See Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, 965 N.E.2d 264, at ¶ 15. Thus, his facial challenge is without merit.

{¶31} R.C. 2925.37(B) also stands up to scrutiny as applied to the facts of A.P.'s case. A.P. altered the pills by smashing them and mixing them with oil or grease. His conduct clearly falls within the definition of "make." A reasonable person would believe the substances to be counterfeit substances—Ward described their appearance and testified that they resembled crack cocaine and were packaged like crack cocaine. A person of ordinary intelligence would understand that R.C. 2925.37(B) proscribes crushing pills, mixing them with oil, and packaging them so as to look like crack cocaine.

{¶32} Regarding A.P.'s claim that R.C. 2925.37(B) will result in arbitrary and discriminatory enforcement:

> [N]umerous innocent scenarios may be presented regarding almost every criminal statute, possible doubt as to enforcement by the appropriate authorities cannot give rise to constitutional infirmity. Moreover, in order to be declared unconstitutionally vague, a statute must be vague in all of its applications, assuming the statute implicates no constitutionally protected conduct.

*Collier*, 62 Ohio St.3d at 272, 581 N.E.2d 552.

{¶33} The only evidence A.P. has presented in support of his argument on arbitrary and discriminatory enforcement is a statement made by the juvenile judge during the objection hearing. In explaining her concerns with the constitutionality of R.C. 2925.37(B), the judge referenced a time when she would crush pills and mix

them with orange juice for her mother, who could not swallow pills, and wondered whether that type of conduct would be considered criminal under R.C. 2925.37(B).

{¶34} The judge did not make a substance that a reasonable person would conclude was a controlled substance. She described it as a paste, dissimilar to the substances made by A.P., and there is no indication that the judge packaged the pills and orange juice mixture in a manner resembling how crack cocaine is packaged. The example cited by the judge is clearly distinguishable from the facts of the present case. Moreover, as discussed above, A.P. cannot show that R.C. 2925.37(B) is vague in all of its applications. Therefore, he has failed to demonstrate that R.C. 2925.37(B) will lead to arbitrary and discriminatory enforcement.

{¶35} Finally, A.P. contends that "making" a substance should not result in a "trafficking" charge because he did not try to sell the substances or pass them off as real drugs. However, the inclusion of "make" in the definition of R.C. 2925.37(B) was likely a conscious decision by the legislature. A person who makes a counterfeit controlled substance does not do so for personal consumption, so it is logical to assume that it was made to be trafficked as if it was a real drug.

{¶36} A.P. has failed to prove beyond a reasonable doubt that R.C. 2925.37(B) is unconstitutionally vague. The first assignment of error is overruled.

### Conclusion

{¶37} All three assignments of error are overruled and the judgments of the trial court are affirmed.

Judgments affirmed.


**MYERS, P.J.,** and **WINKLER, J.,** concur.

12

Please note:

The court has recorded its own entry on the date of the release of this opinion.