[Cite as *In re D.A.*, 2022-Ohio-1359.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

        CASE NO.  4-21-15

    D.A.,

DELINQUENT CHILD.            O P I N I O N

Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 34700

**Judgment Affirmed**

Date of Decision:  April 25, 2022

APPEARANCES:

    *Timothy C. Holtsberry* **for Appellant**

    *Russell R. Herman* **for Appellee**

**SHAW, J.**

{¶1} Delinquent child, D.A., brings this appeal from the November 15, 2021 judgment of the Defiance County Common Pleas Court, Juvenile Division, determining that he was a delinquent child due to his commission of Gross Sexual Imposition in violation of R.C. 2907.05(A)(5), a fourth degree felony if committed by an adult. On appeal, D.A. argues that there was insufficient evidence presented to adjudicate him a delinquent child, that his adjudication was against the manifest weight of the evidence, and that the trial court erred by holding a "mandatory" sex offender classification hearing.

*Background*

{¶2} D.A. was born in September of 2003. In the 2017-2018 school year he was in special education classes along with A.C., who was born in October of 2003. Due to their cognitive limitations, both D.A. and A.C. were classified into the 1% of students with most significant needs.

{¶3} On November 16, 2017, D.A. and A.C. were part of a group of students who were taking a field trip to Dollar General in Hicksville in order to obtain items to make a Thanksgiving meal. Eight children and two adults went on the trip in a school van. A.C. sat in the very back of the van on a bench seat and D.A. sat beside her. According to A.C., on the trip to Dollar General, D.A. took her hand and put it on his penis over his pants. D.A. then put his hand down A.C.'s

pants and touched her vagina with his fingers. A.C. tried to pull away and push D.A.'s hand away but was unsuccessful. D.A. eventually stopped when it was time to get out of the van because, according to A.C., he did not want to get "caught."

{¶4} A.C. did not tell anyone about the incident for several years. While at school one day a few years later, A.C. observed D.A. acting like he was smacking the "butt" of a female teacher. A.C. complained about the incident and was upset when D.A. did not get into trouble. A.C. indicated that she felt bad for the teacher because it seemed like D.A. was bullying the teacher like he had bullied A.C. After D.A. did not get into trouble, A.C. disclosed the incident that had occurred on the school van in 2017. A Hicksville Police Officer investigated the matter.

{¶5} On June 3, 2021, a complaint was filed alleging that D.A. was a delinquent child due to his commission of Gross Sexual Imposition in violation of R.C. 2907.05(A)(5), a fourth degree felony if committed by an adult. It was alleged that D.A. committed the offense against A.C. whose ability to resist or consent was substantially impaired because of a mental condition and D.A. had reasonable cause to believe that A.C.'s ability to resist or consent was impaired based on a mental condition. D.A. denied the allegation.

{¶6} The matter proceeded to an adjudicatory hearing on October 6, 2021. At the hearing, testimony was presented from A.C., A.C.'s mother, the Hicksville School Psychologist, a former Hicksville Intervention Specialist who arranged the

field trip to Dollar General and went on the field trip on the day in question, and the Hicksville Police Officer who investigated the matter. In his case-in-chief, D.A. presented the testimony of the other adult who had been on the field trip, the former middle school principal at Hicksville.

{¶7} After hearing the testimony, the trial court found A.C. to be "very credible in the court[']s eyes." (Tr. at 139). The trial court then determined that the State had proven beyond a reasonable doubt that D.A. was a delinquent child due to his commission of Gross Sexual Imposition as alleged in the complaint.

{¶8} On November 15, 2021, the matter proceeded to a dispositional hearing. D.A. received a suspended commitment to DYS for a minimum of 6 months to a maximum of the age of 21. D.A. was then committed to JDC for a period of 90 days effective immediately, though 60 days were suspended. D.A. was also placed on probation until December 31, 2022.

{¶9} On November 16, 2021, the State requested a hearing to determine whether D.A. should be classified as a juvenile sex offender registrant. A hearing was held on December 14, 2021, wherein the State requested that D.A. be given the discretionary classification of a juvenile sex offender registrant/Tier I sex offender. D.A. opposed the designation; however, the trial court ultimately imposed the discretionary designation. D.A. subsequently filed the instant appeal, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The adjudication of delinquency under R.C. 2907.05(A)(5) is**
**against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**The adjudication of delinquency under R.C. 2907.05(A)(5) is in**
**error as the mens rea portion of that statute had insufficient**
**evidence to sustain a finding of true at an adjudication.**

**Assignment of Error No. 3**
**The trial court was in error in holding a classification hearing that**
**it deemed mandatory in contradiction to R.C. 2152.83(B).**

{¶10} For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

{¶11} In his second assignment of error, D.A. argues that there was insufficient evidence presented to adjudicate him a delinquent child. Specifically, he argues that due to his own cognitive limitations he could not have completed the act of Gross Sexual Imposition "knowingly." In addition, he argues that the charge violated his Equal Protection rights because he is among the individuals that R.C. 2907.05(A)(5) was intended to protect.

Standards of Review

{¶12} At the outset, it is important to emphasize that "[t]he standards for evaluating the weight and sufficiency of the evidence in juvenile adjudications are the same as the standards used in adult criminal cases." *In Re: A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, citing *In re: A.P.*, 1st Dist. Hamilton

Case No. 4-21-15

Nos. C-190553, 2020-Ohio-5423, ¶ 9. With regard to D.A.'s sufficiency challenge, "[w]hether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Statutes

{¶13} In this case, D.A. was determined to be a delinquent child due to his commission of Gross Sexual Imposition in violation of R.C. 2907.05(A)(5), a felony of the fourth degree if committed by an adult. This statutory provision reads as follows:

> **(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:**

-6-

\* \* \*

**(5)  The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.**

**{¶14}** D.A. focuses his challenge on the mental culpability element, "knowingly," which is defined in R.C. 2901.22(B) as follows.

**A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.**

Trial Evidence

**{¶15}** A.C., the alleged victim, testified that she had known D.A. for most of her life, that they went to school together, that they were in the same grade, and that they were in the same classroom for multiple years.  A.C. had an IQ of 62, which placed her in the first percentile of students, or those with the "most significant needs."  (Tr. at 79).  D.A. also fell into that first percentile of students

with most significant needs and he had similar cognitive disabilities to A.C.[1] However, testimony indicated that D.A. was better than A.C. at observing social expectations, taking social queues from other people, and blending in with others.

{¶16} In November of 2017, A.C. and D.A. were in the same eighth grade class. The class was scheduled to go on a field trip to Dollar General on November 16, 2017, to get supplies to make a Thanksgiving meal. A school van was procured for the trip.

{¶17} On the date of the trip, eight students and two adults rode in the school van. The middle school principal drove, with a student in the passenger seat. A Hicksville Intervention Specialist sat with a student who needed assistance on one set of seats, while A.C. sat in the van's far back bench seat. D.A. sat beside A.C. in the middle of the bench seat. On D.A.'s other side was a child named Jared, who was "mostly nonverbal."

{¶18} A.C. described the van, the seating arrangements, and named the students she recalled being present during the trip. She also recalled what she was wearing—a pink shirt and blue jeans with white on the front of the pants. She testified that D.A. was wearing a sweatshirt and "joggers."

{¶19} On the way to Dollar General, A.C. testified that D.A. took her hand and put it on his penis, over his clothes. She testified D.A. then undid her pants and

---

[1] His IQ may have even been slightly lower, at 60.

that D.A. "put his hands inside of [her] pants and in [her] underwear." (Tr. at 39). She testified that he touched her vagina with his fingers. A.C. testified it lasted a couple of minutes, that she could not get away from D.A., and that she tried to pull away. She testified that she thought Jared saw what happened. According to A.C. the incident ended when they had to get out of the van because D.A. thought they were going to "get caught." (*Id*. at 43). A.C. affirmatively testified that it was not something she wanted to happen, and that she told D.A. to stop one time. Notably, the intervention specialist who was on the trip did not recall hearing A.C. say "stop," and she did not recall whether the van was quiet or noisy.

{¶20} A.C. acknowledged that she did not tell her story until years later. While in class years later she saw D.A. making a gesture "like he was smacking the teacher's butt." (Tr. at 55). She testified that she felt bad for the teacher and felt like the teacher was being bullied like D.A. bullied her. A.C. testified that after that incident she could not take it any longer so she told an adult what had happened on the field trip to Dollar General in 2017.

{¶21} The matter was reported to the police and a Hicksville Police Officer investigated. The officer spoke with some of the other children who went on the field trip. He also tried to speak with the "mostly nonverbal" Jared. However, none of the children saw or heard anything if they were able to speak at all, and nothing of value was learned from Jared.

{¶22} The officer observed and photographed the school van that was taken. He also sat in the back on the bench where A.C. would have been and determined that it would have been very difficult to see anything happening there for the adults closer to the front of the van, or even for the children in the next row. The officer also confirmed that both D.A. and A.C. were on the field trip.

{¶23} At trial, testimony was provided regarding A.C. and D.A.'s cognitive abilities. The school psychologist testified that she thought all of the students in the class recognized that they had special needs, but she could not speculate whether the children were aware of each other's special needs.

Analysis

{¶24} On appeal, D.A. argues that the State did not sufficiently establish the "knowledge" requirement in the Gross Sexual Imposition statute. More specifically, he contends that the State did not, and effectively could not, establish that D.A. "kn[ew] or ha[d] reasonable cause to believe" that A.C. was "substantially impaired because of a mental" condition. R.C. 2907.05(A)(5). D.A. claims that there was no evidence that he had any knowledge of A.C.'s disabilities and that there was no evidence establishing that D.A. would even be able to discern whether A.C. had a mental disability due to his own cognitive limitations.

{¶25} Contrary to his arguments, it is important to emphasize some of the circumstantial evidence in this case. D.A. only performed the act while in the back

of the van with A.C. in a secluded location. He also stopped the act when the van reached Dollar General due to his fear of getting "caught." Given what he was doing and how he was doing it, a trial court could infer that D.A. was able to understand right from wrong and what touching was appropriate.

{¶26} Moreover, the trial court saw and heard A.C.'s testimony and was able to observe her own cognitive abilities. Although D.A. did not testify, the testimony indicated that D.A. and A.C. had similar needs. Further, testimony indicated that D.A. was actually better than A.C. at observing social expectations of his peers and was able to blend in.

{¶27} We emphasize that "a defendant acts knowingly, when, although not intending the result, he or she is nevertheless aware that the result will probably occur." *State v. Anderson*, 10th Dist. Franklin No. 10AP-302, 2010-Ohio-5561, ¶ 13, citing *State v. Edwards*, 83 Ohio App.3d 357, 361 (10th Dist. 1992); *State v. Gribben*, 3d Dist. Seneca No. 13-19-50, 2020-Ohio-3083, ¶ 20. Here, given the circumstances surrounding D.A.'s actions, we cannot find that the evidence, when viewed in the light most favorable to the State, was insufficient to support the adjudication in this matter. Similarly, we cannot find as a matter of law that D.A. was incapable of acting "knowingly" where the only testimony indicated that he seemed to understand rules and boundaries. Thus this argument is not well-taken.

{¶28} Next, D.A. argues that the charge in this case violated his Equal Protection rights. He contends that R.C. 2907.05(A)(5) was intended to protect individuals who were mentally impaired from being sexually molested. Because of this, D.A. contends that he, like A.C., is a member of the protected class, particularly since his IQ may have even been a couple of points lower than A.C.'s.

{¶29} In support of his argument, D.A. cites the Supreme Court of Ohio's decision, *In re D.B.*, 129 Ohio St.3d 104, 2011-Ohio-2671, wherein it was determined that Rape pursuant to R.C. 2907.02(A)(1)(b) was "unconstitutional *as applied* to a child under the age of 13 who engages in sexual conduct with another child under 13." (Emphasis added.) *In re D.B.* at syllabus. In that case, three boys under the age of 13 engaged in sexual acts, but only one child was charged with Rape. Essentially, the Supreme Court of Ohio held that in a case where multiple children under 13 engaged in sexual acts with each other they could *each* be charged with Rape under the statute on the basis of age alone, and because only one child was charged with Rape and another was not, the statute violated the juvenile's right to Equal Protection.

{¶30} In addressing D.A.'s argument in this case, we emphasize that D.A. did not raise the purported Equal Protection issue until his direct appeal. He never raised the issue in the trial court, depriving the trial court of the chance to address

the matter. By contrast, in *In re D.B.*, the constitutional issue was litigated from the inception of the case.

**{¶31}** It is a well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *State v. Awan,* 22 Ohio St.3d 120, 122 (1986), quoting *State v. Childs,* 14 Ohio St.2d 56, (1968), paragraph three of the syllabus. "[T]he question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *Id.* at 122.

**{¶32}** Here, D.A. "forfeited his constitutional challenges" by failing to object. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034 ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770 (1993), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019 (1938) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' * * *. Mere forfeiture, as opposed to waiver, does not extinguish an 'error' * * * ").

**{¶33}** However, we do have the discretion to consider a forfeited constitutional challenge and may do so under the plain error standard. Under that standard, "we require a showing that but for a plain or obvious error, the outcome

of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Quarterman* at ¶ 16, citing *State v. Davis,* 127 Ohio St.3d 268, 2010-Ohio-5706, ¶ 29. The burden of demonstrating plain error is on the party asserting it. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 17.

**{¶34}** Addressing the matter under a plain error standard, *In re D.B.* is still readily distinguishable from the case *sub judice*, particularly because *In re D.B.* involved a strict liability statute. There is no mental culpability element in R.C. 2907.02(A)(1)(b). Thus, in *In re D.B.*, the children merely had to engage in sexual conduct with another child under the age of 13, making all of the children equally guilty of the crime of Rape. The various children could then be selectively prosecuted, creating an Equal Protection problem.

**{¶35}** Here, the State still had to establish the element of "knowingly." Unlike *In re D.B.*, D.A. cannot claim that by virtue of being touched, A.C. was guilty of the same statutory crime that D.A. was, or that by virtue of being forced to touch D.A., A.C. was guilty of a crime. Thus *In re D.B.* does not compel a different result in these circumstances.

**{¶36}** It seems that D.A. is asking this Court to make a determination, that as a matter of law, someone of a lower cognitive ability could never meet the threshold for a "knowing" mental culpability. Given the sliding scale of

-14-

intelligence, and the differing nature of understanding between human beings, this would be almost impossible to quantify. Here, the State presented testimony from which a trier-of-fact could infer that the "knowing" element was met. Based on the record before us, we cannot find that the trial court erred by finding that sufficient evidence was presented in this matter. Thus D.A.'s second assignment of error is overruled.

*First Assignment of Error*

**{¶37}** In his first assignment of error, D.A. argues that his adjudication was against the manifest weight of the evidence.

Standard of Review

**{¶38}** In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier-of-fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier-of-fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the

manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Defense Testimony

**{¶39}** The defense presented the testimony of the former middle school principal who drove the van on the field trip. He testified that he did not recall any commotion or hearing A.C. say "no" or "stop." He also testified that he generally found A.C. to be friendly and outgoing. When asked about whether the van was loud during the field trip, he could not recall, but he testified that it was probably quiet because he usually turned the radio down in order to engage the students.

### Analysis

**{¶40}** In challenging the weight of the evidence, D.A. argues that A.C. was not credible, and that A.C.'s claim that she told D.A. to stop was contradicted by the testimony of the two adults in the van who testified that they did not recall hearing A.C. say "stop." Further, D.A. argues that A.C. only disclosed the incident after D.A. had been a bully and was not punished for it. D.A. also renews his argument that he could not have acted knowingly.

**{¶41}** Undoubtedly credibility was a key determination for the trial court in this matter. As we have stated previously, a reviewing court must allow the trier-

of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The trier-of-fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶42} Here, the trial court explicitly found A.C. to be a "very credible" witness. In fact, the trial court stated,

> **Surprisingly, this victim's ability to communicate what happened was quite clear and quite credible given her obvious developmental disabilities and delays, which were substantiated by the other evidence regarding of course her intellectual disabilities and short comings and the information regarding her I.Q. and [so] forth. Her story is unrefuted. It is well substantial. [sic] I believe even though this was a delayed reporting case, the officer did a very thorough job of investigating this situation in looking into all the possible explanations for what occurred. There is nothing that has been demonstrated to indicate that this young lady would have vindictive motive or reason to lie so to speak. It was very obvious to the court that it was difficult and embarrassing for her to retell the story before a roomful of adults who were all in attendance here in this court. That certainly would be a deterrent to somebody \* \* \* simply making up a story. The story appears to clearly be true and have occurred. The witness is very credible in the court[']s eyes.**

(Tr. at 138-139).

{¶43} Given the trial court's strong findings with regard to credibility of the victim, we cannot find any basis to reverse the trial court's determination. Moreover, it is true that when investigating the matter the officer learned that the

-17-

field trip did take place, that the school van was used, that the backseat bench was as described by A.C., and that both A.C. and D.A. were not marked absent on the day of the trip. Thus D.A. certainly had the opportunity to commit the crimes, which supports A.C.'s testimony.

{¶44} Although D.A. argues that the trial court erred by finding that A.C.'s testimony was "unrefuted" he does not point to any evidence that specifically "refutes" her claims. He argues that because the adults testified that they did not recall hearing A.C. say "stop" it did not happen. However, the adults simply did not remember hearing anything being said. They did not testify specifically that it did not happen. It also was not clear if A.C. said "stop" very loud. Given the size of the van and any potential noise therein, we would have to speculate that the adults could have heard her anyway.

{¶45} On the basis of the record before us, we cannot find that the trial court clearly lost its way by adjudicating D.A. delinquent in this matter. Therefore, his first assignment of error is overruled.

*Third Assignment of Error*

{¶46} In his third assignment of error, D.A. argues that the trial court erred by holding a sex offender classification hearing that "it deemed mandatory" in contradiction of R.C. 2152.83(B).

Revised Code 2152.83

**{¶47}** D.A. argues that the trial court mistakenly treated the sex offender classification hearing as mandatory in this matter, whereas it was actually discretionary pursuant to R.C. 2152.83(B), which reads as follows:

**(B)(1) The court that adjudicates a child a delinquent child, on the judge's own motion, may conduct at the time of disposition of the child or, if the court commits the child for the delinquent act to the custody of a secure facility, may conduct at the time of the child's release from the secure facility a hearing for the purposes described in division (B)(2) of this section if all of the following apply:**

**(a) The act for which the child is adjudicated a delinquent child is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002.**

**(b) The child was fourteen or fifteen years of age at the time of committing the offense.**

**(c) The court was not required to classify the child a juvenile offender registrant under section 2152.82 of the Revised Code or as both a juvenile offender registrant and a public registry-qualified juvenile offender registrant under section 2152.86 of the Revised Code.**

**(2) A judge shall conduct a hearing under division (B)(1) of this section to review the effectiveness of the disposition made of the child and of any treatment provided for the child placed in a secure setting and to determine whether the child should be classified a juvenile offender registrant. The judge may conduct the hearing on the judge's own initiative or based upon a recommendation of an officer or employee of the department of youth services, a probation officer, an employee of the court, or a prosecutor or law enforcement officer. If the judge conducts the**

**hearing, upon completion of the hearing, the judge, in the judge's discretion and after consideration of the factors listed in division (E) of this section, shall do either of the following:**

**(a)   Decline to issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code;**

**(b)   Issue an order that classifies the child a juvenile offender registrant and specifies that the child has a duty to comply with sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and that states the determination that the judge makes at the hearing held pursuant to section 2152.831 of the Revised Code as to whether the child is a tier I sex offender/child-victim offender, a tier II sex offender/child-victim offender, or a tier III sex offender/child-victim offender.**

Analysis

**{¶48}** D.A. was adjudicated a delinquent child in this matter and was ordered to serve a commitment at the juvenile detention center.   At the time of his dispositional hearing, D.A. was not classified as a juvenile sex offender registrant.

**{¶49}** After D.A. was sent to the juvenile detention center, but before he was released, the State requested that the trial court schedule a classification hearing for D.A. upon his release from the detention center.  Pursuant to R.C. 2152.83(B), the State had a right to request such a hearing.  The trial court subsequently scheduled a hearing on the matter.

**{¶50}** At the hearing, the State requested that D.A. be designated a juvenile sex offender registrant, noting that the designation was within the discretion of the

trial court. Defense counsel then stated that he thought there was some discretion that the trial court did not have to register the offender until he was off of probation, and he requested that the court abstain from classifying D.A. at all until probation had ended.

**{¶51}** The trial court responded that "I think he has to be registered upon release from a secure facility" and defense counsel responded "I believe there is some "may" language in there, not "shall." (Tr. at 5). The trial court responded, "I will listen to you, but I believe --- my interpretation was that it was mandatory, but you can go ahead, [defense counsel]." (*Id.*) Defense counsel then reiterated that he felt the trial court could wait to classify D.A. until D.A. was off of probation.

**{¶52}** Regardless of any discussion between the trial court and defense counsel that occurred before any ruling was made on D.A.'s registration status, when the trial court made its determination on classifying D.A. as a juvenile sex offender registrant, the trial court stated, "In terms of the classification, it is discretionary." (Dec. 14, 2021, Tr. at 8). Thus the trial court was aware that this was a discretionary matter, and not a mandatory matter.

**{¶53}** The fact is, even if we assumed that D.A. was correct and the trial court could hold a hearing at the conclusion of probation, the trial court had *discretion* to determine the matter the day the hearing was held. The State requested a classification hearing, the trial court held a full hearing, and employed its

*discretion* to designate D.A. a juvenile sex offender registrant.  In fact, the trial court specifically stated that the issue would be a matter subject to review in the future.

**{¶54}** Based on the record before us, we cannot find that the trial court erred. Therefore, D.A.'s third assignment of error is overruled.

*Conclusion*

**{¶55}** For the foregoing reasons D.A.'s assignments of error are overruled and the judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**